WILLIAM NEALE ET AL. V. STEPHEN W. SEARS.

Where a vendee purchases from a vendor in possession of and using certain billiard tables, and there was nothing on the records of the county contradicting this presumed and publicly-avowed ownership, it seems that he has a better right than the owner who permitted his property to be thus publicly possessed.

It is not necessary that the rightful owner shall be guilty of fraud in permitting such use of his property. He more properly comes under the classification of the rule that, where one or two innocent persons must suffer, he who trusted most should suffer most.

By tacitly assenting to the assumed ownership of property by the person in possession, and thus inducing a lender to treat it as a security, the rightful owner is legally and equitably precluded from asserting his ownership to the detriment of the *bona fide* lender or innocent purchaser.

APPEAL from Cameron. The case was tried before Hon. EDWARD DOUGHERTY, one of the district judges.

There were many questions of practice raised which the chief justice disregarded, and considered only the equitable rights of the parties under the proofs. These facts are sufficiently stated in the opinion of the court.

This was an action for the recovery of two billiard tables and fixtures, embracing a sequestration of the same, brought by the appellee, as plaintiff below, against the appellant, Cowen, and one Lockman, Cowen holding and claiming through one White, as trustee, for the benefit of William Neale, the other appellant.

The defendants filed various exceptions to the regularity and legality of the proceedings in procuring the sequestration, &c., to the sufficiency of the petition, and answered by general denial.

At this stage William Neale filed his plea of intervention, claiming the property in question in his own right, and praying judgment of adjudication accordingly.

To this petition plaintiff filed exceptions, which were overruled, and also answered by general denial.

The case was tried by the judge without a jury.

The plaintiff offered various documents in evidence, tending to deduce his title from one David White to the property in question. Also the files of the "Daily Rio Grande Courier," to show that White and Sears had, previously to November 24, 1866, been partners in the "El Dorado saloon," formerly known as the "White House," and the dissolution of the firm at that date.

Of the documents thus presented by plaintiff were the dissolution and the sale from White to Sears, which purported to convey the property in question, but had no internal-revenue stamps, nor were any of the plaintiff's muniments authenticated for record, and of course were not recorded.

All these documents were objected to as illegal and insufficient for the purposes sought by plaintiff, and particularly the purported sale of White to Sears of the property in question, as not being stamped according to the law of congress, and as not being recorded, and therefore affording no notice, and for this was within the statute of frauds, &c.

The court, without rejecting the said documents at once upon these objections, received them provisionally for consideration on its finding, and admitted parol testimony tending to show a sale of the property by White to Sears upon their dissolution.

The defendant, Cowen, and intervenor, Neale, upon the conclusion of the plaintiff's testimony, moved the court to strike out from consideration all testimony offered by plaintiff which tended to show the title of the property in question in the plaintiff, Sears, at any time after the 24th November, 1866, the date of the dissolution of the partnership of plaintiff and D. White, without the knowledge of such fact being shown to come to either the defendant, Cowen, or intervenor, Neale, before the right of the said Neale accrued.

1. Because, as partnership property, it was competent for White, before the dissolution, to dispose of or pledge his interest in the same, as he might see fit, and to the exclusion of all subsequent dispositions.

2. That upon the dissolution of the partnership, on the 24th August, 1866, the notice of the same was published in the public newspapers, in which was a clause that the said "White would continue the business at the old stand" without reservation, and signed by both Sears and White, and that in the same paper, and continued until 1867, David White advertised the establishment as proprietor, including the billiard tables, &c.

3. That the transfer of said property, if at all, was within the statute of frauds, for want of registry, &c.

Which motion the court refused to grant or act upon until all the testimony should be in.

Whereupon the defendants and intervenor proceeded with their testimony, and deduced the title of the intervenor by documents, as follows: Note signed by Wells & Co. and David White, dated December 4, 1866, and secured by deed of trust, on one month's time, for $600, in favor of L. Cowen, as trustee for William Neale.

The deed of trust of same date, conveying the property in question to Louis Cowen, as trustee, with authority to sell, in case of default, for the benefit of William Neale.

The intervenor also offered a chattel mortgage, dated August 5, 1867, in his favor, covering this and other property.

Defendant and intervenor also offered in evidence the trustee's sale and the purchase of the property by Neale, under due notice, and a letter from White as to the disposition of any surplus proceeds.

And in this connection the *Reporter* calls attention to the language of the agent and witness, Holder: "I did not hold a written power of attorney from Sears before nor at any time since the bringing of this suit."

We now come to consider the plaintiff's evidence in support of his claim to a recovery of the property in question. He first of all made proof of a partnership between himself and one David White, previously and up to the 24th of November, 1866, and of a dissolution of the same on this date. In making proof of this dissolution, which is published in the newspaper, is a clause, signed both by the plaintiff and White, that "White will continue the business at the old stand."

The plaintiff next offered in evidence his "document B," which purported to be a sale to him by White of the whole establishment and the tables in question for the consideration of $1. To this document the defendant and intervenor objected, as not being stamped and as not being probated and recorded, etc., which document reads as follows:

"Know all men by these presents that I, David White, of the city of Brownsville, Texas, for and in consideration of $1, to me in hand paid by Stephen W. Sears, the receipt whereof is hereby acknowledged, and for the further consideration of the transfer of all his right, title, and interest in the stock, fixtures, furniture, and business of the saloon known as the 'El Dorado,' do hereby assign, transfer, set over, bargain, and sell out to the said Stephen W. Sears all my right, title, and interest in the saloon situated on the corner of Thirteenth and Elizabeth streets, in this city, and also my one-half interest in two billiard tables, situated in the 'El Dorado' saloon, free and clear of all incumbrances whatever, to have and to hold, him and his heirs, forever.

"In witness whereof I have hereunto set my hand and seal, this 24th day of November, 1866.

"David White.

"Witness, George M. Wells."

Although the court ruled out this document in his finding in the case under the objection, yet he held it for consideration until that stage in the case, and heard parol

testimony tending to show the same transaction independent of it and as a means of avoiding the objection.

Upon the conclusion of the evidence in the cause the defendant and intervenor renewed the motion previously made to strike out certain testimony of the plaintiff.

The court held this motion over, to consider with its finding, and finally denied it.

Upon this general statement of the case the court gave judgment for plaintiffs for the property in question and assessed its value at $950, from which judgment the defendant and intervenor appealed to this court for revision.

*Stephen Powers* and *N. Maxan,* for appellants.—The first objection that presents itself is the ruling of the court upon the exceptions of defendant filed on 29th of March, 1867, embracing in substance, First, the informality in issuing the writ; second, the want of authority in Holder to sign the bond for Sears; and, third, the general one of other causes apparent.

I. The defendant and intervenor insist that they dealt with White as they found him held out to the public by the plaintiff and as the owner of the property he advertised as proprietor. That he was so regarded by persons who had business relations with him and by the community in general.

Mr. Elam testified that he was about the establishment and even lived there after the dissolution, and that no separate account of the billiard earnings was kept; they were put into the bar-drawer with the money accruing from the sale of liquor. Now, this is against the testimony of Lockman, who was examined by the plaintiff.

And upon this topic we have other evidence, showing the utter unreliability of this man Lockman in his statements. The deputy sheriff, Hip, in the exercise of his official functions, went to these premises and levied an attachment on this same property as that of White, that

the same was thus under seizure until the sequestration in this suit was levied, more than one month, and that he put Lockman in charge of the same as keeper, he never disclosing his agency of the plaintiff nor that the plaintiff claimed it! And who is to blame for this reticence of Lockman? Why, if he really was the agent of the plaintiff, no one but Sears could complain of his acts. He is bound by them and their effects.

There is also another variance between the plaintiff's witnesses, Lockman and Holder. Lockman says that Sears put him in possession of the tables, and that he was to pay the proceeds over to him; whereas Holder says that he went with Sears to White's, and that there Sears authorized White to run the tables and to account to him for the proceeds.

It is for the plaintiff to reconcile these contradictions.

II. If the plaintiff is shut off from the use of his conveyance for the want of a stamp, it is a disability voluntarily incurred, and he has no one to blame but himself, as Mr. Kingsbury testifies that at the date of this transaction he had plenty of all denominations of stamps, and for some time after. Now, we do not know in what particulars the English stamp law is different from our own, but we do know that so long as a conveyance, with us, is unstamped, it is void of all legal and useful purposes. (Pamph. Law, sec. 158, p. 119.) And under these circumstances will the policy of the law allow evidence to be given by parol of what is shown to exist by deed? We have shown that it will not. (1 Greenl. on Ev., § 87.) And, besides and in addition and in confirmation of what we have here advanced, the law provides (Pamph. Law, p. 119, sec. 158, last clause) that "no right acquired in good faith before the stamping of such instrument or copy thereof and the recording thereof, as herein provided, if such record be required by law, shall in any manner be affected by such stamping as aforesaid."

III. Now, this is the position of the intervenor, Neale; he is the owner in good faith of the property in question, nor can his right be affected by any assumed or pretended notoriety of the plaintiff's right to the same. (1 Greenl. on Ev., §§ 137, 138.)

And in this respect we say the court erred in not striking out the plaintiff's testimony, offered to supply and as a substitute for the invalid conveyance, and relating to the assumed notoriety of his title.   His conveyance, if any he had, besides other disabilities, was clearly within the statute of frauds. (Paschal's Dig., Art. 3876; Twine's Case, with American notes by Hare & Wallace, 1 Smith's Leading Cases.)

IV. Again, this question of notice was raised by the defendant's exceptions to the circumstantiality set out in the plaintiff's petition, which were overruled, and the exception reserved; and he dealt with White on the presumptions raised by the law, that "as men generally own the personal property they possess, proof of possession is presumptive proof of ownership." (1 Greenl. on Ev., § 34.)

The policy of our law does not hold private property at the mercy or uncertainty of this or that one's notion of what is or is not known in this community in regard to the tenure of it. (1 Greenl. on Ev., § 138.)

It is submitted, then, in view of this whole case, that the plaintiff has failed to show any legal or valid title to the property in question, and that the intervenor, Neale, has shown such title, and that he is entitled to have the judgment of the district court reversed and reformed to suit the justice of his case.

*McManus & Cummings*, for appellee.—I. The allegations of plaintiff's petition, briefly set forth, are, that on the 14th of June, 1866, he and one David White formed a co-partnership in the business of keeping the bar-room and billiard saloon known as the "White House" and subsequently as

"El Dorado." It appears in evidence that plaintiff at the same time acquired a one-half interest in four billiard tables situated in the said saloon, for the sum of $1,200 cash paid to White; that on the 13th of the following November they as partners purchased also a one-half interest in the saloon known as "Barneys," from one Pedro Marceli, to whom they traded two of the four billiard tables in the "El Dorado."

On the 24th of November, eleven days after this new purchase, White & Sears dissolved partnership, and made a division of the partnership property, White retaining the "El Dorado" saloon, and Sears taking for his share the two remaining billiard tables in the "El Dorado" and the interest of the late firm in "Barneys." Provision was also made for the payment of the debts of the late firm, each partner agreeing to assume individually certain stipulated items of indebtedness by the firm to various creditors of the late firm.

In the month of January, (12th,) Louis Cowen appears in the character of trustee, and, to secure the payment of an alleged indebtedness to William Neale, offers the property of David White for sale at public auction during the absence of Sears. A writ of sequestration was sued out by Mr. Daniel Holder, as agent of Sears, on the 23d of January, 1867, and then commenced this suit, wherein William Neale appears in the double character of *cestui que trust* and as "the just and true owner of the billiard tables, &c., under valid conveyances from the original owner."

It is believed that, every allegation of the plaintiff's petition having been impregnably fortified by the concurrent testimony of five intelligent and disinterested witnesses, the following are, under the pleadings, the material points now to be considered:

II. Did Stephen W. Sears, after the 24th of November, 1866, by any means become divested of his title in and to the two billiard tables in controversy; if so, by what means?

2. If the title by which he became owner at that time was not a good one, why was it not?

3. If Sears' ownership of the tables, on the 24th of November, 1866, subsequently passed to another, who was that other, and how and when did the transfer take place?

4. What right or interest had White in the tables after the 24th of November, 1866?

5. Did White, or Sears, or any one, owning the tables by a valid title, subsequent to the 24th of November, 1866, transfer the same to William Neale, so as to invest him with the ownership of the tables?

6. Was the notoriety of the partnership between Sears and White, previous to November 24, 1866, and its dissolution at that date, on terms also proved to have been of public notoriety, sufficient notice to have put a purchaser on inquiry in regard to the right of one of the late partners to sell or mortgage effects of the late partnership?

7. The joint ownership of Sears and White of the saloon and billiard tables, prior to the dissolution on the 24th of November, being proved, (*vide* advertisement of the firm in the Rio Grande Courier of October 1 and to and including November 24, and testimony of Holder, Ford, Clandon, &c.,) have the defendants attempted to show a title or a shadow of a title derived from Sears?

III. Without entering on an argument as to these and less important incidental questions, we refer to the following authorities as sustaining the position that, after the 14th of June, 1866, to and including the 14th of January, 1867, no valid transfer of the property could have been made without the concurrence of Stephen W. Sears, which is nowhere pretended in the claim set up to his property. (O'Brien v. Hilburn, 22 Tex., 616; Andrews v. Beck, 23 Tex., 457; Watkins v. Edwards, 23 Tex., 443; Clifton v. Lilly, 12 Tex., 130; Calvit v. Cloud, 14 Tex., 53; Dooley v. McEvins, 8 Tex., 306; Davis v. Loftin, 6 Tex., 489.)

IV. A lien or mortgage, if valid, can only be enforced by

xxxi—8

judicial proceedings. A pledge or pawn must be accompanied by delivery and possession. (Jones v. Thurmand's Heirs, 5 Tex., 318; Luckett v. Townsend, &c., 3 Tex., 119.)

The seller of a chattel, if in possession, warrants his title thereto; if the seller is out of possession, and no affirmation of title is made, the purchaser buys at his peril. (McKinney v. Fort, 10 Tex., 220; Brightman v. Reeves, 21 Tex., 70; Daniel v. Hill, 23 Tex., 571.)

The possession of Sears, through his agents, Lockman and Holder, was undisturbed until Mr. Cowen interfered in January, 1867.

Neale, having been defrauded by White by false representations, that he, White, was the owner of the property, has his action against White, but could derive from White no just claim on the property of Sears without the knowledge or consent of the latter. He made the advances at his own risk, under circumstances that should have put him on his guard.

The rule of *caveat emptor* is particularly applicable in this case. (2 Kent, 483; Story on Cont., 840–842.)

MORRILL, C. J.—The controversy in this case is respecting the ownership of two billiard tables.

The appellee and one White, as partners, owned a billiard saloon, and on the 24th day of November, 1866, the partnership was dissolved, and notice thereof was published in the public papers, as follows:

"The partnership heretofore existing between David White and Stephen W. Sears is hereby dissolved from this date by mutual consent. Mr. White will continue the business at the old stand.

"STEPHEN W. SEARS.
"DAVID WHITE.

"BROWNSVILLE, TEXAS, *November* 24, 1866."

In the same paper and the subsequent issue appeared the following advertisement:

"El Dorado saloon, formerly known as the White House, on Elizabeth street, between 13th and 14th streets. The proprietors of that well-known establishment recommend themselves to the public and their numerous friends by their choice liquors, fine billiard tables, and all the appurtenances of a first-rate establishment.     DAVID WHITE."

At the time of this dissolution it appears that Sears, one of the partners, became the sole owner of the two billiard tables in controversy, but which he permitted White to retain in the El Dorado saloon, and to advertise as if the whole establishment, including the tables, was the property of White; that White continued as the sole proprietor of the saloon, including the tables, contracted debts, and on the 4th December, 1866, one G. M. Wells, with said White, executed their note in favor of the plaintiff in error, Neale, for the sum of $600, and White gave a deed of trust on the billiard tables to secure the payment of the note, and that the billiard tables were sold agreeably to the stipulations of the trust deed, and purchased by the beneficiary, Neale.

The case was submitted to the judge without a jury, and the judge found the facts substantially as herein stated, but gave a judgment in favor of Sears.

From all we can perceive we consider that Sears was in reality the owner of the property, but placed the same in the possession of White, who publicly proclaimed himself the owner, or what was equivalent.

Neale, seeing White in possession of the tables, and seeing nothing on the records of the county contradicting this presumed and publicly avowed ownership, loaned money to White, secured by the two billiard tables.

The statutes, [Paschal's Digest, Art. 3876,] being the 2d section of the act to prevent frauds and fraudulent conveyances; also article 4993, respecting registration; the case of Davis v. Loftin, 6 Tex., 499; Twine's Case and the notes and authorities added thereto in Smith's Leading Cases, are conclusive on the point at issue in this case.

We do not attribute fraud to Sears; on the contrary, as far as we can judge from the record, his motives were influenced by kindness toward White, and the case might more properly come into the class where one of two innocent persons must suffer; and it is a well-established rule that he who trusts most must suffer most. (Story's Eq., §§ 105, 108, 165, 381, 434.)

Because Sears tacitly assented to the assumed ownership of the property by White, and thereby induced Neale to loan money to White upon the security furnished by this property, he is legally and equitably precluded from asserting his ownership to the detriment of Neale, who appears an innocent purchaser. The case will be reversed and

REMANDED.