FRANK COLLINSON V. J. D. JEFFERIES ET AL.

Decided November 25, 1899.

**1.   Fraud and False Representations—Subscription for College.**

A subscription to a proposed college may be avoided for fraud and deceit where it was procured by false representations—among others, that another person had agreed to give an amount equal to the total amount that should be subscribed,—the one who presented the subscription paper and made the representations knowing them to be untrue, and concealing the heading of the paper from the subscriber by folding it back so that it was not read.

**2.   Same—Representations as to Future Matters Material.**

False representations to the effect that a proposed college was to be nonsectarian and named after a certain person are sufficiently material to avoid a subscription procured by virtue thereof, and that they relate to future matters does not affect such consequence.

APPEAL from the County Court of Donley.   Tried below before Hon. B. H. WHITE.

*Plemons & Veale* and *D. B. Hill,* for appellant.

*Browning & Madden,* for appellees.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by appellees to recover $500 and interest from appellant upon the following subscription contract:

"Clarendon, Texas, April 2, 1898.—We, the undersigned, promise to pay the amount set opposite our names for the purpose of erecting and maintaining a college of high grade in Clarendon, Texas, said college to be under the auspices and control of the Methodist Episcopal Church, South, according to the laws and usages of said church, the amount signed by each to be a personal binding obligation upon each, said amount to be paid to a building committee in such installments as they desire, or as designated by each subscription hereto."

Among other matters set up as a defense, the appellant pleaded that he was induced to sign the contract by false and fraudulent representations, in that H. W. Taylor, one of the plaintiffs, and the person who procured him to sign the said contract, represented to him that the college was to be known as "Goodnight College," and that C. Goodnight and his wife Mary had agreed that, if the people in and around Clarendon would donate a certain sum of money for the purpose of erecting the college, he and his wife would give an amount equal to the aggregate amount so subscribed by all the people, and in addition thereto would donate a herd of buffaloes owned by them or the proceeds thereof to the same purpose; that said college would be nonsectarian, and that unless all these things occurred as stated his subscription should be and become void; that he believed said representations true, and relying thereon "attached his signature to a paper which said plaintiff assured him was

a subscription list embodying the stipulations, conditions, and provisions as outlined by plaintiffs to him at the time; that relying solely on the representations and statements, provisions and stipulations said to be contained in and to be part of said subscription list so furnished him to sign at the time by plaintiff Taylor, and the further fact that at the time plaintiff Taylor presented said subscription list to sign, and at the time of his so signing the same, all that part of heading of said subscription list was so folded together as that defendant could not see the heading thereof and was not afforded an opportunity to read the same, and having the utmost confidence in plaintiff he did not read the conditions embraced in said list, and did not in fact know just what language it contained." He then alleges that Goodnight and wife never had agreed to donate nor had they donated an amount equal to the aggregate amount subscribed by the people of Clarendon; that they never had agreed that said college should be nonsectarian, and it was not in fact to be nonsectarian, and never had agreed to endow said college with the herd of buffaloes or with the proceeds of the sale of said herd, and that the college was not named "Goodnight College." That plaintiff knew said representations were untrue in fact at the time he made them, but they were made fraudulently and with the design to mislead defendant and to induce him to make the subscription sued on, and that he was misled and deceived thereby, and had he known them to be untrue he would not have signed said paper; that the college is not to be nonsectarian, but the same is to be known as the "Clarendon College and University Training School," an institution owned, controlled, and managed by a religious body known as the Methodist Episcopal Church, South.

To this part of appellant's answer the following special exceptions were filed:

"Plaintiffs specially except to the sufficiency of the special answers in defendant's original answer contained, and say the same is insufficient in respect and for reasons as follows:

"First.    It seeks to set up matters and transactions prior to and contemporaneous with the signing of the subscription list as a predicate for the introduction of parol testimony to vary the terms of a written instrument, the instrument sued on.

"Second.    It appears therefrom that the transactions therein sought to be relied upon for a defense herein are and were conversations and transactions to and conversations about another and different college undertaking and enterprise, and shows no connection whatever with the matters in controversy herein.

"Third.    Said special answer, in that it sets up alleged promises as to what Charles Goodnight and Mary Goodnight would do relative to giving said subscription and endowment, is insufficient to show fraud, because (1) it appears that such representations were and are representations as to future transactions and understandings, and not the representing of alleged existing facts then known by the party making them

to be false, and so falsely and fraudulently made to deceive the defendant; (2) it does not appear therefrom that the defendant was by false and fraudulent representations as to any material fact or facts induced to sign the instrument sued upon to his detriment; and (3) it does not appear therefrom that said alleged representations were in truth and in fact false and known to the plaintiff Taylor to be false, and knowingly made by him, falsely and fraudulently, for the purpose of deceiving and misleading the defendant, and that he, relying thereon, signed the instrument sued on.

"Fourth. It appears that the matters and things set up in said special answer are immaterial and irrelevant.

"Fifth. All that part of said special answer which shows that he (defendant) signed such subscription list without reading or knowing its contents is insufficient, because it shows that he could and should have known the same and not relied on such representations."

These exceptions were sustained, and the appellant refusing to amend, the special answer was stricken out, and this action of the court is made the basis of appellant's six assignments of error.

We think the answer presented a good defense, and that the demurrers should have been overruled.

That the representations related to matters and things to be performed in the future cuts no figure whatever. The statements as alleged were of existing facts, except that the college should be nonsectarian and named "Goodnight College," and if these latter representations were known to be untrue, as the heading to the subscription list would indicate, and were made to induce appellant to subscribe money to the building, and did in whole or in part induce him to do so, and he was not allowed an opportunity by Taylor to read the heading, but it was folded so as to prevent him from reading it, and he was induced thereby to sign it, and would not have done so had he known the real facts, the fraud and deceit are complete, and he would be entitled to cancel the contract. Hedin v. Minneapolis Institute, 35 L. R. A., 417, and notes, 62 Minn., 146; Railway v. Titterington, 84 Texas, 223, and authorities there cited; 2 Pom. Eq. Jur., 2 ed., secs. 876, 877, 890.

It is insisted, however, that these representations were not material, but we think they were—substantially all of them, even the name—for one may be willing to give his money to an institution which is to bear his own name or that of his friend when he would not give it upon any other terms. Of course, it is plain that a man may be willing to subscribe to a nonsectarian institution of learning, when he would not give a cent to one organized to propagate and disseminate sectarian views on religion. The other representations—being of facts existing at the time—it is needless to discuss. All the authorities hold that fraud may be predicated on such.

Because the court sustained the exceptions to the special answer aforesaid, the judgment is reversed and the cause remanded.

*Reversed and remanded.*