YOUNG et al. v. BANK OF MIAMI.

(Court of Civil Appeals of Texas. Amarillo. Oct. 25, 1913. On Motion for Rehearing, Dec. 13, 1913.)

1. GUARANTY (§ 82*)—ACTION AGAINST GUARANTORS—PARTIES.

Where defendants guaranteed certain assets of a bank on transferring the bank and its assets to plaintiff, the contract of guaranty being an independent undertaking, the principal debtors were not necessary parties to a suit on the guaranty.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 97; Dec. Dig. § 82.*]

2. GUARANTY (§ 82*) — PARTIES — RIGHT TO SUE.

Where the assets of a firm operating a private bank were transferred to another partnership engaged in operating a new bank, and the latter contracted to collect certain paper, and, if it could not be collected, then defendants, the transferring firm, were to pay the same on transfer of the judgment therefor, and had the option to pay the same in cash and take a transfer thereof, and to designate the attorney who should conduct any suit, the suit on the guaranty was properly brought in the name of the new banking firm.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 97; Dec. Dig. § 82.*]

3. GUARANTY (§ 87*)—ACTION—VARIANCE.

On the transfer of a bank's assets to plaintiffs, a partnership operating a new bank, defendants, the transferrors, guaranteed the collection of such assets, and in an action on the guaranty the petition alleged that plaintiffs were to turn over the paper not collected to an attorney designated by defendants for collection, and defendants were to sue on all of the paper so turned over and collect by execution. The contract for transfer of the assets provided that the new bank was to collect the same by demand or judgment, and, if not so collected, then defendants would pay the debt on the transfer of the judgment. Defendants also had the option, before the paper was placed in the hands of an at-

torney, to pay the same in cash and take a transfer, reserving the right to designate the attorney who should conduct the suit. *Held*, that the gist of the action was whether defendants had breached their contract of guaranty, and though it was alleged, as part of the breach, that the attorney so selected had refused to prosecute the claims to judgment, there was no material variance between the contract and the petition.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 101; Dec. Dig. § 87.*]

4. GUARANTY (§ 70*)—PERFORMANCE OF CONDITIONS—REASONABLE TIME.

Where a contract, guaranteeing certain of the assets of a bank transferred to plaintiffs, provided that all paper due at the signing of the contract should be collected by plaintiffs in 30 days, or suit brought thereon, and, if prompt payment was not made, the paper should be placed in the hands of an attorney for suit thereon, but it was further provided that time was not of the essence of the contract, it was sufficient if uncollected paper was placed in the hands of an attorney within a reasonable time, and hence the guarantors were not relieved from liability because the uncollected assets were not delivered to the attorney within 30 days.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 78–80; Dec. Dig. § 70.*]

5. GUARANTY (§ 36*)—ASSETS OF BANK—CONTRACT—BREACH—MEASURE OF DAMAGES.

Where defendants, on transferring the assets of a bank to plaintiffs, a new partnership operating a new bank, guaranteed the collection of the face value of certain notes and overdrafts transferred, plaintiffs contracting to collect the same by demand or suit by an attorney of defendants' selection, and, if this was impossible, defendants to pay the same and accept a transfer of the assets so uncollected, defendants having repudiated the agreement, plaintiffs were not entitled to recover the face value of the notes and overdrafts so uncollected, in the absence of proof that the principal debtors were insolvent, but the measure of plaintiffs' damage was the difference between the face value of such indebtedness and its actual value.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 38–45; Dec. Dig. § 36.*]

6. GUARANTY (§ 90*)—EVIDENCE.

In an action on a guaranty, made by the owners of a private bank, to a partnership, consisting of one of their number and others who were to operate a new bank, that certain of the assets of the bank transferred were collectible, evidence of one such partners as to representations made by the continuing partner to him as to the collectibility of the paper in the bank was admissible.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 103; Dec. Dig. § 90.*]

7. GUARANTY (§ 77*)—BREACH — WAIVER OF PRECEDENT CONDITIONS.

Where defendants repudiated a guaranty of collection of certain of the assets of a bank and declared that they would no longer be bound thereby, plaintiffs were entitled to accept such declaration as final and as a waiver of all conditions precedent to suit, to be performed by them, and to sue at once for breach of the contract.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 87–90; Dec. Dig. § 77.*]

Appeal from District Court, Hemphill County; C. E. Gustavus, Special Judge.

Action by the Bank of Miami against D. J. Young and others. Judgment for plaintiff, and defendants appeal. Affirmed.

H. E. Hoover, of Canadian, and Ewing & Dial, of Miami, for appellants. B. M. Baker, and G. O. McCrohan, both of Canadian, and J. A. Holmes, of Miami, for appellee.

HUFF, C. J. The statement of the allegations in plaintiff's petition by appellants is adopted by us, as the appellee concedes that it is substantially correct. The statement of exceptions and pleas of defendants will not be made, as we think our opinion will otherwise disclose the issues made thereby:

"This suit was filed in the district court of Hemphill county, on the 20th day of December, 1912, by T. M. Cunningham, L. B. Robertson, W. S. Martin, T. J. Boney, and others, a partnership engaged in a general banking business at Miami, Tex., under the firm name of the Bank of Miami, against D. J. Young, Robt. Moody, Thos. F. Moody, and W. S. Martin. The plaintiff alleged: That on and prior to the 21st day of September, 1912, the defendants were engaged in a general banking business as partners, at Miami, under the firm name of the Bank of Miami, and on that day the plaintiff organized the partnership and purchased the banking business of the defendants, and continued the business under the firm name of the Bank of Miami, and that the purchase included the banking business, real estate, books, notes, accounts, and overdrafts of the defendants. That a written contract was entered into between the parties, which included an obligation on the part of the defendants to guarantee the payment of all notes, overdrafts, accounts, and other paper due at the time of the sale to the Bank of Miami, but said guaranty being given in consideration of the purchase price paid by plaintiff for said banking business and under such conditions as follows: That all the notes, overdrafts, etc., due and to become due the bank were to be collected by the newly organized bank, in so far as collections could be made by notice and demand on the debtors; that, if same could not be so collected, plaintiff was to turn over the paper not collected to an attorney, selected by defendants, for collection by suit, and defendants were to sue on all of said paper so turned over and prosecute to judgment thereon promptly and collect by execution. If collection could not be thus made by execution, then defendants were to pay plaintiff all the money due on the paper not so collected. That thereafter they requested the defendants to designate an attorney, and the defendants designated H. E. Hoover, and thereafter they presented to said Hoover many of the notes, accounts, and overdrafts, and requested him for the defendants to bring suit upon and collect the same. That Hoover, acting for the defendants, accepted certain of the overdrafts and notes for collection, but rejected many others, and turned them to the plaintiff and notified the plaintiff the de-

fendants would not undertake the collection of the same and denied all liability and responsibility thereon under the contract. That, by their act in refusing to take charge of said collections and refusing to put same into judgment and denying liability thereon, the defendants broke their contract with plaintiff, and plaintiff alleged that; pursuant to the terms of said contract, it presented to said attorney certain overdrafts and notes which are set out in the pleadings; that the attorney accepted all of said notes and overdrafts so presented for collection except the note of G. C. Nickel, Geo. Nickel, H. C. Harris, five notes of Tom Cook, and the note of J. G. Ramsey, and the note of W. G. Crawford, and all of the overdrafts, except the overdraft of S. M. Bird, J. G. Ramsey, and H. E. Ratloff (these notes and overdrafts refused being the only items in controversy in this suit). In the seventh paragraph of the petition the plaintiff charges that the defendants, by breaching the contract and denying liability on said notes and overdrafts, had damaged plaintiff in the sum of $25,000, and prayed for judgment for the amount due on the notes and overdrafts, attorney's fees and interest, and, if that should not be allowed, then it prayed for judgment for the amount due on all overdrafts, said notes, attorney's fees, and interest shown to have been rejected by the defendants, and, if same should be rejected, then the decree of the court fixing the liability of defendants; prayed for a writ of mandamus for costs of suit."

The trial court made the following findings:

"Findings of Fact.

"First. I find that on and prior to September 21, 1912, defendants D. J. Young, Robert Moody, Thomas F. Moody, and W. S. Martin were the owners of a banking business, located at Miami, Tex., conducted by them as copartners, under the firm name of the Bank of Miami, Tex., and will hereinafter be referred to as the 'Old Bank.'

"Second. That on September 21, 1912, said defendants sold said banking business to the defendant W. S. Martin and his associates, being the plaintiffs named in the petition, who continued to conduct the said banking business as copartners using also the firm name 'The Bank of Miami, Texas,' and will be hereinafter referred to as the 'New Bank.'

"Third. That the sale of said banking business by the old bank to the new bank was evidenced by a written contract, of date September 21, 1912, with two supplements thereto, admitted in evidence on the trial, and that said contract fixed the rights, duties, and liabilities of all of the parties.

"Fourth. That when said contract was entered into there was owned and in possession of the old bank, as a part of its assets, the following notes and overdrafts, which were owing to it, to wit: Note of H. C. Harris, for $206, dated July 6, 1909, due 90 days; interest 10 per cent. from maturity, bearing a credit of $117, dated September 22, 1911. Note of G. C. Nickel and Geo. W. Nickel for $51.25, dated March 3, 1910, due 90 days; interest 10 per cent. from maturity, bearing credit of $20, dated October 3, 1910. Note of W. G. Crawford for $37, dated August 15, 1910, due 90 days; interest 10 per cent. from maturity, bearing credit of $2.43, undated; another credit, interest paid to January 20, 1911; another credit of $15 dated September 13, 1911; and another credit 'interest paid to January 4, 1912.' Four notes of Thomas Cook, one for $694.66, one for $500, one for $1,000, and one for $1,500, all dated December 27, 1911, due six months after date, bearing interest at the rate of 10 per cent. after maturity, and one note of Thomas Cook for $1,650, dated September 1, 1912, due one day after date, bearing interest at 10 per cent. from date. Overdraft against S. M. Bird for $2,601.25 and overdraft against J. G. Ramsey for $214.29. And that said notes and overdrafts are the only items involved in this suit, and were included within the terms of the contract of September 21, 1912.

"Fifth. That the evidence introduced did not show that the old bank held any security for the payment of said notes and overdrafts, except the Thomas Cook notes, upon which obligations it held collateral as follows: Two notes from Fred D. Kline and Ulricka Kline, payable to the order of Andrew E. Larson, indorsed in blank, without recourse, by the latter, and also indorsed by Thomas Cook, dated May 6, 1910, one for $1,000 due on or before May 6, 1913, and the other for $2,700, due on or before May 6, 1915, both bearing interest at 7 per cent. from date, and were secured, as the testimony showed, by a mortgage on some land in the state of Oklahoma, upon which there were some prior incumbrances of approximately $4,000, and that the land was subsequently sold at sheriff's sale under foreclosure of one of the prior incumbrances; and four mortgages in the form of deeds executed by Thomas Cook to W. S. Martin for some town lots in Hereford, Tex.; and a tract of land in Castro county, Tex., containing 327 acres.

"Sixth. That the new bank, after its purchase of the banking business and the execution of the contract of September 21, 1912, and within 30 days, in substantial compliance of said contract, attempted to collect said notes and overdrafts, but failed to do so, and such indebtedness is still owing and unpaid.

"Seventh. That the new bank, in substantial compliance with the contract of purchase and within a reasonable time, and without breach or waiver of its rights under said contract, requested D. J. Young to select and designate an attorney to sue upon said notes and overdrafts, and collect them by judgment and execution if possible, with the end in view of complying with the terms of said contract of purchase, and holding the old

bank liable for the ultimate payment of all of said indebtedness, in accordance with the terms of said contract.

"Eighth. That in pursuance of the request of the new bank, for the selection and designation of an attorney, the defendant D. J. Young, acting for the old bank, under the terms of said contract, did on November 11, 1912, select and designate H. E. Hoover, Esq., an attorney of Canadian, Tex., to handle said indebtedness, and notified the new bank thereof, which was in substantial compliance with said contract.

"Ninth. That the said H. E. Hoover accepted the designation of himself, and thereupon and thereby became the agent and representative of the old bank to act for them in the premises, and defendants are bound by his acts in reference to the indebtedness mentioned.

"Tenth. That correspondence was conducted between the new and old banks during the months of October and November, 1912, prior to November 19, 1912, as shown by the letters offered in evidence; some of the letters referring to some of the items of indebtedness mentioned, but not to all of them.

"Eleventh. That on November 14, 1912, the old bank called upon the new bank to place in hands of H. E. Hoover all of the indebtedness then due, which the new bank would not release from the guaranty contained in the contract of September 21, 1912, and in pursuance to such request the new bank on or about November 19, 1912, delivered to the said H. E. Hoover a number of notes and overdrafts, including the notes and overdrafts involved in this suit.

"Twelfth. That in making delivery to H. E. Hoover, on or about November 19, 1912, of the notes and overdrafts involved in this suit, the new bank was acting in substantial compliance with the terms of the contract of September 21, 1912, and within a reasonable time, and the evidence offered in behalf of the old bank was not sufficient to show that there had been a breach or waiver, by the new bank, of the terms of said contract as to such items of indebtedness.

"Thirteenth. That the said H. E. Hoover, acting for the old bank, on or about November 21, 1912, returned the items of indebtedness involved in this suit to the new bank, and declined and refused to carry out the terms of the contract as applied thereto, as evidenced by the letter of said H. E. Hoover to W. S. Martin, cashier, dated November 21, 1912, read in evidence on the trial of this case, which letter I find to be a repudiation of the contract and denial of any and all liability on the items involved, which act has been fully ratified by the old bank.

"Fourteenth. I further find that the testimony offered by the old bank to show that there was loss of security, in the sale of the land in Oklahoma under prior incumbrances, was insufficient to show there had been a loss of security such as would release the old

bank from the guaranty as to the Thomas Cook notes.

"Fifteenth. I further find that the new bank, after the return, by the said H. E. Hoover, of the items of indebtedness involved in this suit on November 21, 1912, has not instituted suit upon any of them or taken any further action to enforce collection."

By clause 4 and the supplement to the contract, the Moodys and Young guaranteed $19/20$ of the notes and overdrafts of the old bank, as shown by the books on the 21st day of September, 1912, "in case of failure to collect said notes, as hereinafter indicated." All notes and overdrafts guaranteed by the old bank were to be collected by the new bank. Demand for payment was to be made immediately upon the indebtedness becoming due, and, if not promptly paid, the paper was to be placed in the hands of an attorney for collection by suit and suit to be immediately instituted thereon. The attorney was to be selected by the old bank; suit was to be pressed to judgment as soon as possible; and, when judgment was obtained, execution was to be issued; and, if the money could not be made by execution, then the old bank was to pay the same upon a due transfer of the judgment to the parties composing the old bank. By the contract the old bank transferred to the new the entire property of the Bank of Miami, including the banking house and grounds, all bills, notes, and other property of whatsoever kind or character; the price was the capital stock, $25,000, surplus $15,000, and the net earnings of the business from January 1, 1912, to date of delivery of the property, and $2,500 bonus and premium.

[1] By exceptions and plea in abatement, the appellant sought a dismissal of the cause for the reason that the principal obligors in the notes and overdrafts were not made parties, and no excuse in law was alleged, authorizing the suit against the guarantors, without joining the principals, on the ground that the appellants in the contract declared on were only sureties or guarantors. "The guarantor, being bound by a separate contract and only collaterally liable, cannot be joined in the same suit with the principal." Brandt, Surety & Guarantor, § 2; Shropshire v. Smith, 37 S. W. 174, and Id., 37 S. W. 470; Page v. White Sewing Machine Co., 12 Tex. Civ. App. 327, 34 S. W. 988. The contract of guaranty in this case is an independent undertaking on the part of the guarantors. They are not bound by the same instruments on which the principals are bound. This suit was upon an alleged breach of the contract of guaranty and for consequent damages. We are therefore of the opinion that it was not necessary to join the principals with the guarantors in this suit, and that there was no misjoinder of causes of action. We do not think articles 1204, 3818, and 3819, Sayles' Civil Statutes, apply to

cases of this character. All assignments complaining of the court's action in overruling exceptions and in not sustaining the plea of abatement, on the grounds above specified, are overruled.

[2] We think the terms of the contract clearly indicate that the suit should be brought in the name of the new bank. The paper was transferred to the new partnership, and it was to collect the same by demand or on a judgment and execution, and, if not so collected, then the old bank would pay the debt upon the transfer of the judgment. By the eighth provision, the old bank had the option, before the paper was placed in the hands of an attorney for collection, to pay the same off in cash and take a transfer; in the fifth paragraph the old bank reserved the right to designate the attorney who should conduct the suit. The evidence would warrant the court in finding that the appellants had the right to direct the bringing of the suit or to prevent one being brought.

[3] A perusal of the correspondence between the parties is at least suggestive that the parties to the contract so interpreted it. The necessity of bringing the suit under the terms of the contract was left to the option of the old bank. Doubtless the suit should have been prosecuted in the name of the new bank, yet both parties were vitally interested in the collection of the indebtedness under the contract. Appellants objected to the introduction of the contract in evidence, because there was a variance between the allegations of the terms of the contract declared on and in the contract offered in evidence. The allegation in the petition that "plaintiff was to turn over the paper not collected to an attorney selected by the defendants for collection by suit, and defendants were to sue on all of said paper so turned over, and prosecute to judgment thereon promptly, and collect by execution," we think presented no material variance in the allegation and the contract. Whether the suit should be brought was largely in the hands of the defendants, and the parties, as above suggested, apparently at least so interpreted the contract; but, if there was a variance from the strict letter of the contract, it was immaterial and would not affect the rights of the parties in this suit. The real question at issue was whether appellants breached the contract. True, it is alleged as a part of the breach that the attorney for appellants refused to take charge of the collections and prosecute to judgment; but the gravamen of the breach alleged is a denial of liability and responsibility thereon under the contract. We think there was no error in admitting the contract in evidence.

The court found from the evidence before him that appellants repudiated the contract and denied any and all liability on the contract involved, which act was afterwards ratified by the old bank. It is urgently contended there was no evidence supporting this finding. We are inclined to believe there is testimony supporting the findings of the trial court; but, as the case will be reversed, we will refrain from discussing it.

[4] Appellants appear to have based their denial of liability on the contract, on the ground in part that suit was not brought in 30 days after the date of the contract. The seventh paragraph of the contract stipulates that all paper due at the signing of the contract shall be collected in 30 days or suit brought thereon in the same manner as mentioned in paragraph 5. The fifth paragraph stipulates that, if prompt payment is not made, it shall be placed in the hands of an attorney and suit immediately instituted. The thirteenth provision declares the terms of the contract are to be complied with and fully settled and terminated as soon as possible, taking into consideration the conditions to be met consistent with good business and the best interest of all concerned, "but it is expressly understood that time is not the essence of this contract." We have concluded, under the provisions of the contract, that appellants were not justified in breaching the contract, because of the thirty day clause; but, under the provisions of the contract, the papers should be placed in the hands of the attorney within a reasonable time, taking into "consideration the conditions to be met," and that it was not the intention of the parties to make time the essence of the contract. "If a party desires to make time of the essence of a contract, he should leave no doubt of the intention of the contracting parties so to make it." Kirchoff v. Voss, 67 Tex. 320, 3 S. W. 548.

The appellants assail the findings of the court, to the effect that the appellee was acting in substantial compliance with the terms of the contract and within a reasonable time, in requesting Young to designate an attorney to bring suit, and in placing the paper in the hands of the attorney so designated, and that in so doing it did not breach or waive its right under the contract, because appellants assert the facts did not warrant the finding. We overrule all assignments bringing into question the findings of the court on this point.

[5] As seen from the above, we do not believe appellants were justified in renouncing liability. Having done so, what are the rights of the respective parties? Appellee, upon the breach, could sue for damages. The appellants, by the twenty-first assignment, assail the judgment of the court in holding that appellee might sue for damages for such breach and were entitled to recover thereunder the face value of the notes and overdrafts sued upon. The trial court, in his conclusions of law, held appellee is "entitled to recover, as measure of damages, the amount due on each of said notes, with interest thereon as stipulated in said notes, to the date of judgment, and the amount of

the overdrafts on September 21, 1912, with interest thereon to the date of judgment, at the rate of 6 per cent. per annum, and have accordingly rendered the judgment." The pleadings do not allege that the parties executing the notes or owing the overdrafts were insolvent, or that the debts involved in this suit were valueless or noncollectible. The evidence does not show such to be their condition. The trial court does not find such to be the fact. Appellees allege and prove a breach of the contract and ask for damages for the breach. The appellants deny their liability on the guaranty, in effect announcing they would not take the indebtedness after it was reduced to judgment and pay for it. Upon the repudiation of such executory agreement by appellants, the appellee could have made its choice between the two courses open to it, but can neither confuse them together nor take both. Appellee was entitled to recover the damages which it sustained from the breach alleged, which in this case perhaps was the face value of the indebtedness. This, however, was subject "to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss."

When appellants renounced liability, the appellee in effect agreed to such renunciation, and was therefore, remitted to its action for damages. In other words, they retained the indebtedness as their property and did not hold appellee to the contract to pay for the same after judgment. Whatever that indebtedness was worth was not a loss. If it was collectible, then the indebtedness was not a loss, and no damage resulted therefrom. By the judgment of the court, appellee recovered the face value of the debt, with interest, and may still retain the indebtedness itself and recover on it, if there is security, or if the parties or any of them are solvent. For such amount which may be collected, appellee is not damaged in that sum, whatever it is. The pleadings and evidence should not only show a breach, but it must also show the damage. As we understand the record in this case, that is not shown. Greenwall v. Markowitz, 97 Tex. 479, 79 S. W. 1069, 65 L. R. A. 302. In the above case, Judge Williams, speaking for the Supreme Court, said: "The following statement of the principles governing such cases in Frost v. Knight, L. R. 7 Exch. 112, has commanded the acceptance of most of the text-writers and courts in England and America: 'The law with reference to a contract to be performed at a future time, where the party bound to performance announces prior to the time his intention not to perform it, as established by the cases of Hochster v. De la Tour, and The Danube & Black Sea v. Bowden, Reid v. Hoskins, and Barwick v. Buba, on the other, may be thus stated: The promisee, if he pleases, may treat the notice of intention as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of nonperformance; but in that case he keeps the contract alive for the benefit of the other party as well as his own. He remains subject to all his own obligations and liabilities under it, and enables the other party not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any supervening circumstance which would justify him in declining to complete it. On the other hand, the promisee may, if he thinks proper, treat the repudiation of the other party as a wrongful putting an end to the contract, and may at once bring an action as on a breach of it; and in such action he will be entitled to such damages as would have arisen from the nonperformance of the contract at the appointed time, subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss.' When the promisee adopts the latter course, treating the contract as broken, and himself as discharged from his obligations under it, he resolves his right into a mere cause of action for damages. He is no longer concerned with the disposition which the promisor may make of the subject-matter of the contract."

The contract of guaranty, as we interpret it, is that the indebtedness is collectible by law. The burden in such case is on the plaintiff to show the noncollectibility of the indebtedness. Brandt, Suretyship & Guarantor, §§ 111–113; Evans v. Bell, 45 Tex. 555. If there is any presumption to be indulged in, it should be presumed that the debtor will and can pay his obligation, and, in the absence of proof to the contrary, that the appellee can and will collect the indebtedness declared upon. If they do so, then they have lost nothing, in so far as the debts are concerned, and are not damaged in that sum by the breach of the contract. The appellee cites us to the case of Young v. Dalton, 83 Tex. 497, 18 S. W. 879, as authority sustaining the measure of damages adopted by the trial court. In that case the contract and breach stipulated for the payment of a note —the contract price of the cattle. This the purchaser failed to do. The court held that the aggrieved party could sue for the contract price at once upon the breach, and that the measure of damages was the amount of the note agreed upon or the contract price. The guaranty in this case is collection—not payment. When the contract was breached, the damages then recoverable are to be measured by the contract. Such indebtedness not collectible would ordinarily measure the appellee's loss or damage. We think the court was in error, under the pleadings and evidence in this case, in fixing the measure of damages at the amount due on the notes and overdrafts. The measure of damages, in our opinion, was the difference between the face

value of the indebtedness and its actual value to be ascertained from the evidence.

[6] We are inclined to think the trial court was in error in excluding the offered testimony of Young, as to certain representations made by Martin to him, with reference to the collectibility of the paper in the bank. We shall content ourselves by referring to the authorities cited by appellants. Collinson v. Jefferies, 21 Tex. Civ. App. 653, 54 S. W. 28; Byers Bros. v. Maxwell et al., 73 S. W. 437; Griswold v. Hazard, 141 U. S. 260, 11 Sup. Ct. 972, 35 L. Ed. 679; Page v. Krekey, 137 N. Y. 307, 33 N. E. 311, 21 L. R. A. 409, 33 Am. St. Rep. 731. As to whether Young was misled or ought to have known the condition of the bank paper, or did know, will be determined after hearing all the evidence by the court or jury trying the case. If there had been no other error, in the present condition of the record, we would not have reversed the case; but, in view of another trial, we express our opinion on the admissibility of the evidence offered and rejected. The twelfth assignment of error is therefore sustained.

[7] We regard the findings of the trial court, to the effect that appellants renounced liability under the contract on the indebtedness declared upon in this case as a breach of the contract, which had the effect, in so far as appellants were able to do so, to repudiate the contract itself and to terminate the contractual relation between the parties. This afforded the appellees an opportunity to accept the declaration if they chose to do so, and thus make effective the declaration of intention not to perform, rendering the contract thereby one that is broken on the part of appellants. The appellee, having accepted the declaration, could at once sue to recover the damages. It was not then necessary to show that all the precedent conditions had been complied with, for appellants, by their renunciation, dispensed with such showing. Appellee then had a cause of action on the breach for the damages sustained. Kilgore v. Northwest Texas Baptist Educational Society, 90 Tex. 139, 37 S. W. 598; 9 Cyc. 635. (3) a.

All assignments not herein mentioned are overruled. We have given our views upon the whole case, without expressing our opinion upon each assignment separately.

For the errors pointed out, the case is reversed and remanded as to the appellants herein, but will be affirmed as to W. S. Martin, as he does not complain in this court at the action of the trial court, and the judgment as to him will be affirmed.

### On Motion for Rehearing.

The earnestness of counsel for appellee, as well as the ability and research which they have put forth upon the motion for rehearing, has induced us to again go over the case carefully and to examine the authorities cited in the motion. In citing Greenwall v. Markowitz, 97 Tex. 479, 79 S. W. 1069, 65 L. R. A. 302, in the original opinion, we did not do so on the measure of damages, but as to the rights and remedies of the parties, when the contract is breached by one. The case of Mudgett v. Texas Tobacco Growing Co., 61 S. W. 149, cited by appellee, illustrates the principle involved. Judge Gill there said: "Conceding, however, the correctness of his contention that he was wrongfully discharged, what right accrued to appellant, and what was his remedy? Clearly, not a suit upon the contract; for that had been breached, and his remedy was either an action for damages for its breach, or to treat the contract as rescinded and sue for his wages already earned and due. The action for the breach of contract is not for wages, but for damages. The policy and purpose of the law in such a case is to compensate the servant for the damages suffered as a proximate result of the breach." This is not a suit on the contract; neither is it one treating the contract as rescinded and a suit to recover the money paid in the purchase of the bank; but it is simply a suit for damages occasioned by a breach—compensation for the damages suffered as the result of the breach. What contract is breached? A guaranty of the collectibility of the indebtedness. What will compensate appellee for this loss? A payment of such indebtedness as is noncollectible. What facts must appellee allege and prove, showing damage and measure the compensation? The indebtedness not collected and that which cannot be. We certainly understand the rule to be that the burden is on the plaintiff in the first instance to allege and prove the breach, the injury, and the amount necessary to compensate him.

The case of Johnston v. Mills, 25 Tex. 704, cited by appellee, is one in which Johnston and Dewberry occupied the position of Young or the old bank, and R. D. and D. G. Mills occupied the position of Martin or the new bank, with reference to the contract. It should also be borne in mind that was a suit on the contract—not for damages for its breach. Johnston and Dewberry bound themselves ultimately to pay certain indebtedness. Judge Roberts said in that case: "Johnston and Dewberry in effect guaranty the note to be good, and that it can be collected so as to complete the extinguishment of their debt to R. and D. G. Mills. Such a guaranty imposes on R. and D. G. Mills the duty to use reasonable diligence in the collection, by due process of law, in its ordinary and regular course, in the absence of any stipulation to the contrary." In that case R. and D. G. Mills reduced to judgment the debt guaranteed and by agreement granted a stay of execution. The court, in that case, further discussing it, said: "It was incumbent on R. and D. G. Mills, in order to recover, to show they had not collected the money on this note, and having shown that, in the steps taken by them, they had departed from the regular

course of the law by giving a stay to Cox, that imposed upon them the burden of showing that their failure to collect was not in whole or in part caused by the stay which they gave."

The contract by appellants in this case was that they guaranteed $19/20$ of the indebtedness so transferred; "that is, in case of failure to collect said notes as hereinafter indicated." The fifth clause of the contract follows the above stipulation, and is headed "Collection of Guaranteed Notes—How to be Made." They must be collected by the appellees Martin and his associates. Demand is to be made immediately upon same becoming due. If not promptly paid, placed in the hands of an attorney for collection by suit. Young and his associates reserving the right to designate the attorney. The suit was to be pressed to judgment, and when obtained execution to be issued, and, if the money could not be made by execution, then appellants were to pay the same upon the transfer of the judgment to them. If this was a suit on the contract to enforce it according to its terms, as was in Johnston v. Mills, supra, then appellees, before they could recover, would have to show that they had not collected the indebtedness and had taken all the steps which the contract stipulated they should, and that they were ready to transfer the judgment after a failure to collect on execution. This contract only stipulated what the law required of appellees without the contract. In Texas City Improvement Co. v. Griswold, 41 S. W. 513, the court said: "The question is whether or not appellant, having guaranteed collection of notes, and not their payment, was subject to suit until a failure to collect from the principals by legal proceedings. As stated before, we have no doubt that if it was alleged and proved that the notes were, for some cause, uncollectible, resort could be had on appellant, and the same would be the case where the uncollectibility of the notes from the maker is demonstrated by judgment and return of nulla bona." If this had been a suit on the contract instead of for damages occasioned by its breach, the burden would have been on appellees to show the notes had not been collected and were not collectible after prosecuting to execution and by failure to collect under execution. If, after a return nulla bona, appellants failed to pay, then they could be sued on the guaranty for the sum so due under the terms of the contract.

Under the breach of a contract upon sale of property, if the warranty is breached, or the thing sold is not as represented, the party aggrieved has two remedies: He may rescind and recover the price paid, or he may retain the thing sold and recover the difference between its value and the agreed price. If it should prove absolutely worthless, the measure of his damages would be the price paid and such additional special damages as may have resulted therefrom.

The appellees cite a line of authorities holding that, when the plaintiff alleges and proves damages resulting from the breach of a contract or from a wrong, then the burden is on the defendant to show that the plaintiff could have mitigated or lessened the damages by the exercise of ordinary care or diligence. This rule is not denied or controverted; but we think it will be hard to find a case where plaintiff's cause of action, whether ex contractu or ex delicto, is made out by simply showing a breach or wrong without showing any injury or damage. Appellees assert simply that appellants must affirmatively prove the negative of the proposition in order to escape liability. The affirmative proposition resting on appellees was that appellants executed a guaranty that the indebtedness could be collected, and that they denied liability, and therefore breached the contract. That this action damaged them. If the indebtedness was paid, they were not damaged. This appellees knew better than appellants, for they had the paper. If not paid, if they could collect, no damage would result under the guaranty of the collection. If not collectible, they should allege and prove that fact in order to show the damages. If it became noncollectible, because of negligence or the want of ordinary care on the part of appellees, then the burden would shift to appellants to show such want of diligence or care. The case of Foster County State Bank v. Hester, 18 N. D. 135, 119 N. W. 1044, cited by appellees, we think sustains our view. Other cases by appellees, we think, can be easily distinguished, either on the facts proven or the contract upon which same is based. We believe the proper measure of damages was stated by us in the original opinion. Brightman v. Reeves, 21 Tex. 70. The case, in our opinion, was properly reversed on the grounds stated in the opinion.

The motion for rehearing is overruled.