SALLIE M. BAKER, ADMINISTRATRIX, v. FORT WORTH
BOARD OF TRADE.

No. 1354.

Corporation—Subscription of Stock—Change of Object—Estoppel.—Defendant subscribed for shares of capital stock in a proposed corporation; the subscription contract reciting, that the capital stock of the corporation should not exceed $50,000, and that the purpose was to organize and establish a board of trade in Fort Worth, Texas. The charter, however, fixed the capital stock at $100,000; and declared the purpose of the corporation to be the erection of buildings and the accumulation and loan of funds for the purchase of real property in Fort Worth and other cities and towns of Texas. *Held,* that there was a material variance between the original subscription paper and the charter, which entitled a subscriber to be released; and that in an action by the corporation to enforce payment of the stock, the subscriber would not be held estopped to set up such defense because of his failure for a few months after the charter was obtained, without actual notice on his part of its terms and the change, to repudiate the subscription and elect to be released thereon.

APPEAL from Tarrant. Tried below before Hon. S. P. GREENE.

*Hunter, Stewart & Dunklin,* for appellant.—Unless the defendants knew of the variance of the charter from the original contract of subscription they would not in law, and could not in fact, be called upon to elect whether they would claim a release on account of said variance or not; and without such knowledge of the variance, no act of theirs could in law be construed as a ratification of or consent to the change or variance. Cook on Stock and Stockholders, sec. 530, note 1; Land

Co. v. Jernegan, 126 Mass., 125; Railway v. Allerton, 18 Wall., 234; 11 Am. Rep., 90; 1 Laws. Rights and Rem., sec. 441; Dorris v. Sweeny, 60 N. Y., 463; 58 N. Y., 397; 30 Mo., 118; 61 Me., 351; 44 Cal., 462; 129 Mass., 540.

The court concluded that defendants had no actual notice or knowledge of said variance until after the filing of this suit, and they could not repudiate on the grounds of variance without knowledge of it. Nor could they elect to be released from said contract on account of said variance without having knowledge of it, and their acts as found by the court can not in law be held to be a ratification, unless there was a finding that they had knowledge of such variance; and certainly not in the face of the conclusion of facts found by the court to the contrary.

*Wynne, McCart & Booty,* for appellee.—1. If one sign a subscription list for stock in a corporation to be thereafter organized, and when afterwards organized the articles of incorporation are materially variant from that proposed in the subscription list, the subscriber will, after the lapse of a reasonable time, be presumed to know of the change and to have acquiesced in it, and will be bound by his subscription. Thomp. on Liability of Stockholders, secs. 150–152; Commonwealth v. Cullen, 53 Am. Dec., 467.

2. If Heck & Baker, at the time of the institution of this suit, had tendered the amount of their subscription and demanded a certificate for their shares of stock to the amount of their subscription, plaintiff would have been compelled to admit them as stockholders. "The criterion of the liability of a subscriber to stock in a corporation is whether any act has been done by which the corporation has been forced to receive a subscriber." 2 Waterman on Corp., 7.

STEPHENS, ASSOCIATE JUSTICE.—The question for decision in this case is, do the findings of fact, there being no statement of facts, warrant the conclusion of law that appellant's intestate was bound to pay appellee the amount of twenty shares of capital stock, at $100 per share, in appellee corporation, subscribed prior to its charter, in the terms following:

"THE STATE OF TEXAS, }
    "County of Tarrant.     }

"Know all men by these presents: That whereas we, the undersigned citizens of Fort Worth, Tarrant County, Texas, have agreed and do by these presents agree to form a corporation under the laws of the State of Texas, for the purpose of organizing and establishing a board of trade in said city of Fort Worth, which shall be known and designated as Fort Worth Board of Trade. That the capital stock of said company shall not exceed fifty thousand dollars ($50,000), divided into shares of one hundred dollars ($100) each, and for the purpose

of establishing said corporation we do hereby mutually agree to pay to said enterprise the sum of one hundred dollars for each share for which we hereby subscribe, twenty-five (25) per cent of our subscription to be paid subject to call, and ten dollars ($10) on each share subscribed for on the first day of February, 1888, and a like amount on the first day of each month thereafter until fully paid."

The charter fixed the amount of the capital stock of said corporation at $100,000, instead of $50,000, as provided in the subscription contract, and declared the purpose of the corporation to be "the erection of buildings and the accumulation and loan of funds for the purchase of real property in the city of Fort Worth, Tarrant County, Texas, and in other cities and towns in the State of Texas."

The trial court's first conclusion of law, that there was a material variance between the original subscription paper and the charter, which entitled the subscriber, if not otherwise bound, to be released, we approve as sustained both by reason and authority. Land Co. v. Jernegan, 126 Mass., 155; Dorris v. Sweeny, 60 N. Y., 463; Railway v. Allerton, 18 Wall., 234.

But we do not concur in the further conclusion, that the failure, under the facts found, within a few months after the charter was obtained by others, to repudiate said subscription or to elect to be released therefrom, deprived appellant of the defense interposed, and made the estate in her hands liable for the amount of the subscription. This conclusion was based not upon acquiescence after knowledge brought home to the subscriber of the variance, for the court found as a fact that the subscriber in question did not have actual knowledge of these changes, but upon the ground that he was "chargeable with constructive notice and knowledge of the provisions of said charter, and of the variance above mentioned."

The rule which we understand to have influenced this conclusion is that of ratification by acquiescence, which has been thus defined by a distinguished judge: "We suppose acquiescence or tacit assent to mean the neglect to promptly and actively condemn the unauthorized act, and to seek judicial redress after the knowledge of the committal of it, whereby innocent third parties may have been led to put themselves in a position from which they can not be taken without loss. It is the doctrine of equitable estoppel." Mech. on Agency, sec. 157.

It will be borne in mind that this is not a suit by creditors, or the liquidator of an insolvent corporation, to recover from a delinquent stock subscriber on the ground that the debts were incurred on the faith of his unrepudiated subscription. In such cases only, if indeed the doctrine of acquiescence without actual knowledge should properly apply in any case, would the failure to act upon constructive knowledge impose a duty, and have application. As against the corporation itself, suing for compliance with a contract which the subscriber never entered into, we think he can, without violating any

duty, legal or equitable, stand upon the terms of his undertaking. By those terms, the formation of the kind of corporation therein specified was a condition precedent.

Nor is this the ordinary case of a subscriber to an existing corporation who seeks to avoid the effect of such subscription, on the ground that false representations as to the character of the corporation induced the subscription. In such case the duty arises to act promptly in disaffirming the contract, because, in terms, the subscriber is bound.

Here the subscription was for stock in a corporation not then formed, and which has never yet been formed.

We conclude that the judgment should be reversed, and here rendered in favor of appellant.

*Reversed and rendered.*

Delivered November 7, 1894.