LAW REPORTING CO. v. TEXAS GRAIN & ELEVATOR CO.    (No. 1335.)

(Court of Civil Appeals of Texas.    Texarkana. May 14, 1914.)

1. PARTNERSHIP (§ 197*)—ACTIONS.
    A firm cannot be sued by its firm name, but the action must be against the partners composing it.
    [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 360; Dec. Dig. § 197.*]

2. LIMITATION OF ACTIONS (§ 121*)—PLEADINGS—EFFECT.
    Where an action was brought against a corporation when in fact no corporation existed, but in less than two years from the time of the accrual of the cause of action the partners composing a firm having the same name as of the alleged corporation appeared alleging the partnership and its membership, and answered by demurrer and general denial, the individuals supplied the necessary averments sufficient in the absence of any other pleadings to support a judgment against them, so that the action was pending from the time the answer was filed within the statute of limitations.
    [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 537, 540; Dec. Dig. § 121.*]

3. JUDGMENT (§ 18*)—PLEADINGS.
    The court, in determining the kind of judgment the pleadings will support, may consider the averments of both parties.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 34–37; Dec. Dig. § 18.*]

4. CONTRACTS (§ 93*)—MEETING OF MINDS—MEANING OF WORDS.
    A contract to furnish the testimony at a hearing before the Interstate Commerce Commission at a specified sum per folio is binding on both parties as against the objection that one of them did not understand the meaning of the word "folio."
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 415–419; Dec. Dig. § 93.*]

5. WORK AND LABOR (§ 10*)—CONTRACT—VALUE OF SERVICES.
    Where the minds of the parties to a contract for services did not meet as to the meaning of a word used in determining compensation, the party rendering the services could recover the reasonable value thereof when found by the jury.
    [Ed. Note.—For other cases, see Work and Labor, Cent. Dig. § 25; Dec. Dig. § 10.*]

6. CONTRACTS (§ 278*)—PERFORMANCE—COMPENSATION.
    A party contracting to furnish the testimony at a hearing before the Interstate Commerce Commission at a specified sum per folio is entitled to recover, though the transcript of the testimony was returned to the party by the adverse party within a reasonable time.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1207–1213; Dec. Dig. § 278.*]

7. CORPORATIONS (§ 642*)—FOREIGN CORPORATIONS—TRANSACTING BUSINESS.
    A foreign corporation contracting to furnish a transcript of the testimony at a hearing before the Interstate Commerce Commission is not transacting business in Texas, where the transcript is prepared in a sister state and transmitted to the other party to the contract in Texas.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520–2527; Dec. Dig. § 642.*]

Error to District Court, Tarrant County; W. T. Simmons, Judge.

Action by the Law Reporting Company against the Texas Grain & Elevator Company. There was a judgment for defendant, and plaintiff brings error. Reversed and rendered for plaintiff.

Spoonts, Thompson & Barwise, of Ft. Worth, for plaintiff in error. Goree & Turner, of Ft. Worth, for defendant in error.

HODGES, J. The plaintiff in error is a private corporation with its domicile and place of business in the city of New York. The defendant in error is a partnership composed of E. B. Doggett, J. L. Moore, and E. N. Rogers, residing in Tarrant county, Tex. This suit was brought by the plaintiff in error in 1907, for the purpose of recovering the sum of $649.20 alleged to be due from the defendant in error as the value of certain testimony taken and reported for them during the hearings before the Interstate Commerce Commission. The following correspondence explains the service rendered,

and is relied upon as constituting the contract sued on:

"Re Grain Investigation. Interstate Commerce Commission—Dear Sir: We have completely transcribed and are prepared to furnish at once the testimony taken recently in the grain investigation by the Interstate Commerce Commission at Chicago, Kansas City, Omaha and Des Moines, at the rate of ten cents per folio. This testimony is of the utmost importance to grain, elevator and railroad companies. The hearings will be resumed at Milwaukee on the 20th, Minneapolis the 21st, and Duluth the 23rd inst. May we enter your order? Awaiting your commands, we are
"Respectfully yours,
Law Reporting Company."

That letter was written November 15, 1906, and addressed to the Texas Grain & Elevator Company, to which that company replied on November 20, 1906, as follows:

"Law Reporting Company, 67 Wall Street, New York: Please send me one copy of the testimony taken in the Interstate Commerce Commission Grain Investigation, at ten cents per folio.
"[Signed] Texas Grain & Elevator Company,
"Edwin B. Doggett."

At the time this correspondence took place an investigation such as that referred to in the first letter above mentioned was being conducted by the Interstate Commerce Commission. The defendants in error were engaged in the grain business in the city of Ft. Worth. Copies of the testimony were sent by mail to the defendants in error during the next 30 days, and were accepted and retained by them. The testimony furnished was in form of loose sheets bound together much in the same manner as the transcript and statement of facts are bound in cases appealed to the higher courts. When the last of these sheets were delivered on December 23, 1906, a bill was rendered to the defendants in error showing that 6,492 folios had been furnished, which at 10 cents per folio amounted in the aggregate to $649.20. The testimony showed that E. B. Doggett was the member of defendants' firm who conducted the correspondence and was the only one who knew the terms of the contract. Doggett testified that he understood the term "folio" to mean a pamphlet, or small book, consisting of a number of pages bound together, and he supposed the testimony would cost only a few dollars. Upon receipt of this bill he immediately wrote the plaintiff in error that there must be some mistake; that the Texas Grain & Elevator Company did not want the books for copies of the testimony, and had not ordered any such books or contracted to pay any such price for this testimony; that it was not worth more than a mere newspaper report. The defendants in error then returned the transcripts by express. The plaintiff in error refused to accept them, and sent them back to the defendants in error. The latter, however, declined to pay, and this suit followed. On March 28, 1907, the plaintiff in error filed its original petition against the Texas Grain & Elevator Company, alleging that it was a private corporation, and then proceeded to set out its cause of action. On March 3, 1908, the Texas Grain & Elevator Company filed its original answer consisting of a general demurrer and a general denial, and alleging that the Texas Grain & Elevator Company was a copartnership composed of E. B. Doggett, J. L. Moore, and E. N. Rogers. On November 8, 1912, the plaintiff in error filed its first amended original petition, still complaining of the Texas Grain & Elevator Company as a corporation. On November 11, 1912, the Texas Grain & Elevator Company filed its first amended original answer, which consisted, among other things, of a plea in abatement praying for the dismissal of the suit on the ground that the Texas Grain & Elevator Company was not a corporation, but a copartnership composed of the members set out in its original answer. On November 18, 1912, the plaintiff in error filed another amended original petition, in the first portion of which it alleged that the Texas Grain & Elevator Company was a corporation, but further alleged in the alternative that if it was not a corporation it was a copartnership composed of E. B. Doggett, J. L. Moore, and E. N. Rogers. The court overruled the general demurrer and the special exceptions raising the defense of limitation.

The case was submitted to the jury on special issues, and the following is the substance of the findings returned by the jury: (1) The jury did not believe that Doggett understood fully and clearly the meaning of the word "folio" as used in connection with the measurement of testimony at the time he wrote the letter ordering the transcripts. (2) That the word "folio" as used by the plaintiff in its letter proposing to furnish the testimony meant 100 words. (3) That the word "folio" as understood by people engaged in taking testimony means 100 words. (4) That the reasonable value of the services performed by the plaintiff in furnishing the testimony to the defendants, which was the subject-matter of the contract, was 10 cents per 100 words. (5) That the plaintiff did furnish the testimony as per contract. There were two questions propounded which the jury failed to answer, and which by agreement of the parties were answered by the court. Those questions and the answers are as follows:

"(1) Did the minds of the parties meet, and was there any agreement between them for the sale and purchase of the testimony in the preceding questions on the basis of 10 cents per 100 words? You will answer this question 'Yes' or 'No.'" Which the court answered, "No."
"(2) Did the defendant, Texas Grain & Elevator Company, return or offer to return the volumes of testimony sent to it within a reasonable time after their receipt and examination of said volumes so furnished?" Answer: "Yes."

Upon these findings the court rendered a judgment in favor of the defendants in error, that the plaintiff in error take nothing by its suit and pay all costs.

The record does not disclose what partic-

ular state of facts the court based his judgment upon. The defendants in error seek to sustain it upon the following grounds: (1) That the cause of action was barred by the statute of limitation of four years; (2) that the minds of the contracting parties did not meet, and there was no contract to receive and pay for the testimony at 10 cents per 100 words; (3) because the plaintiff in error was a foreign corporation and was undertaking, by furnishing this testimony, to carry on a business in this state without first securing a permit.

[1-3] In support of the defense of limitation it is contended that there was in fact no suit against the defendants until the filing of the last amended original petition in March of 1912; that all of the prior proceedings on the part of the plaintiff were against the Texas Grain & Elevator Company as a corporation, when there was in fact no such corporation in existence. From this it is argued that there was no suit instituted to interrupt the running of the statute of limitation. It is true a copartnership cannot be sued by its firm name, but the action must be against the individuals composing it. That proposition has been decided so often that it is useless to cite authorities in support of it. It may be conceded, however, that in filing the original petition in 1907 the plaintiff did not state a cause of action against the members who composed the particular partnership known as the Texas Grain & Elevator Company. Had those individuals declined to answer that petition, no valid judgment could have been rendered against them. But in less than two years from the time the cause of action accrued they filed an answer, the first portion of which, after giving the style and number of the case, is as follows:

"Now comes the defendant herein, the Texas Grain & Elevator Company, a firm and copartnership composed of E. B. Doggett, J. L. Moore, and E. N. Rogers, and demurs," etc.

After the general demurrer there follows a general denial. It is a well-known rule that, in determining the kind of judgment the pleadings will support, the averments of both parties may be looked to and taken into account. San Marcos Electric Light & Power Co. v. Compton, 48 Tex. Civ. App. 586, 107 S. W. 1151; Lyon v. Logan, 68 Tex. 521, 5 S. W. 72, 2 Am. St. Rep. 511; Wright v. McCampbell, 75 Tex. 644, 13 S. W. 293; Prichard v. McCord Collins Co., 30 Tex. Civ. App. 582, 71 S. W. 303; McCord-Collins Co. v. Pritchard, 37 Tex. Civ. App. 418, 84 S. W. 388. When the defendants filed their answer in March, 1908, they supplied the necessary averments showing who constituted the Texas Grain & Elevator Company. Had there been no other pleadings, these were sufficient to support a judgment against the members composing that firm. It may therefore be said that an action on this claim was pending from the time this answer was filed. This is sufficient to dispose of the defense of limitation. The order of the court in overruling the exceptions raising that defense indicates that he took this view of the case.

[4] The court found that the minds of the parties did not meet upon the meaning of the word "folio." That fact cannot justify a judgment in favor of the defendants. That the minds of the parties did definitely meet upon the stipulation that the charge for the testimony was to be 10 cents per folio is not denied. It is no excuse for the defendants to say that Doggett, their agent, did not know the meaning of a word in such common use. Had he consulted some standard dictionary he would have discovered that the term "folio" as used with reference to legal proceedings means a certain number of words in the measurement of copying, and in some instances it signifies 100 words. Section 854 of the United States Compiled Statutes is as folllows:

"The term folio, in this chapter, shall mean one hundred words, counting each figure as a word. When there are over fifty and under one hundred words, they shall be counted as one folio; but a less number than fifty words shall not be counted, except when the whole statute, notice, or order contains less than fifty words."

This section was prescribing a rule for measuring printed matter as a basis of computing fees for publishing any notice or order required by law, or the lawful order of any court, department, bureau, or other person, in any newspaper. This proceeding was before a federal tribunal, and presumably the federal statutes, in so far as applicable, would govern.

[5] If, however, it should be said that the minds of the parties did not meet as to the meaning of the word "folio" as used in that correspondence, the jury found that the reasonable value of the service rendered was 10 cents per 100 words. There was a sufficient basis in the plaintiff's pleading to support a judgment upon that finding, for it had made appropriate allegations in order to meet that particular defense.

[6] Another ground upon which defendants in error seek to justify the judgment of the court is that the transcripts were returned within a reasonable time to the plaintiff in error. We do not think that constitutes any defense. Evidently those transcripts were intended to furnish the defendants in error, as early as practicable, copies of the testimony taken before the Interstate Commerce Commission. After having received and used them within the time contemplated by the parties, the defendants in error should not be permitted to escape liability by returning the copies.

[7] The last defense, that the plaintiff in error had no permit to transact business in the state of Texas, is untenable. It was not "transacting business" in Texas, but this was interstate commerce. Its work was performed in another state and was then transmitted to the defendants in error in this state. The statute requiring a permit to do busi-

ness as a condition precedent to the collection of the debt by suit has no application. Miller v. Goodman, 91 Tex. 41, 40 S. W. 718; Barnhard v. Morrison, 87 S. W. 378.

The judgment of the district court will be reversed, and judgment here rendered in favor of the plaintiff in error for the amount sued for, together with all costs both of this court and of the court below.