COMMONWEALTH BONDING & CASUALTY INS. CO. et al. v. MEEKS. (No. 935.)*

(Court of Civil Appeals of Texas. Amarillo. March 8, 1916. On Motion for Rehearing, April 26, 1916. Second Motion for Rehearing Denied June 28, 1916.)

1. CORPORATIONS ⊚⇒80(10)—STOCK SUBSCRIPTION—SUIT TO CANCEL—LACHES.

In a suit to cancel notes given upon a stock subscription, to recover vendor's lien notes given to the defendant as collateral to such notes, and to recover money paid to defendant company, evidence *held* to sustain a finding that plaintiff was not guilty of laches in not instituting his suit earlier.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 262; Dec. Dig. ⊚⇒80(10).]

2. ESTOPPEL ⊚⇒96—GROUNDS—NEGLIGENCE—INJURY.

Where negligence is relied upon as a ground of estoppel, it must not only influence the action of some other person to his injury, but it must appear that it might reasonably have been expected that it would have such effect, though the other person exercised ordinary care.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 288; Dec. Dig. ⊚⇒96.]

3. CORPORATIONS ⊚⇒80(2) — STOCK SUBSCRIPTION—FRAUD OF AGENT—NOTICE.

Where the agreement between plaintiff subscribing to the stock of defendant company and the agent of the company, that when organized plaintiff would be appointed its representative in loaning money in certain territory, was attached to the subscription contract and passed into the hands of the company after its organization, it was not thereby charged with notice of alleged misrepresentation of its promoter with reference to the amount of capital stock paid in and its readiness to lend money, and the plaintiff could not rescind his subscription without showing that, before it was accepted, the company had notice of the fraudulent misrepresentations.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 246, 247; Dec. Dig. ⊚⇒80(2).]

4. PARTNERSHIP ⊚⇒216(3)—ACTION AGAINST PARTNERSHIP—LIABILITY OF INDIVIDUALS—VARIANCE.

In a suit to rescind a stock subscription and to recover of the company's promoter, the petition alleging that two named individuals acting under two different firm names undertook to organize a corporation, that another party was their duly authorized agent in soliciting plaintiff to purchase stock, that such individuals knew and approved his representations, that they falsely and fraudulently made such representations to induce plaintiff to subscribe for stock and deceive plaintiff, that a certain amount of cash was paid to one of such individuals and to one of his firms, and that they fraudulently and wrongfully retained it, over the objection that while such promoters were sued as individuals the proof showed a cause of action against their firm, gave jurisdiction as to the individual retaining the cash payment.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 418; Dec. Dig. ⊚⇒216(3).]

5. APPEAL AND ERROR ⊚⇒253—OBJECTION TO PLEADING—TIME.

Where the trial court's attention was not called to the conflicting allegations of the petition by exception thereto, the question could not be raised on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1485, 1488, 1491–1493; Dec. Dig. ⊚⇒253.]

6. PARTNERSHIP ⊚⇒197—SUIT AGAINST—PARTIES.

Partnerships are not recognized either by the common or statutory law as constituting separate and distinct legal entities, and there is no right to sue or be sued in the partnership name; but litigation by or against partnerships must be conducted in the name of the individual members and not in the partnership name.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 360; Dec. Dig. ⊚⇒197.]

7. COURTS ⊚⇒122—JURISDICTION—AMOUNT—ALLEGATION—PROOF.

The fact that the evidence showed that plaintiff was entitled to recover less than the jurisdictional amount would not defeat the jurisdiction once acquired, in the absence of a pleading and proof that the jurisdictional allegation was fraudulently made.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 413, 427; Dec. Dig. ⊚⇒122.]

8. PRINCIPAL AND AGENT ⊚⇒106 — AGENT'S MISREPRESENTATION — LIABILITY OF PRINCIPAL.

Plaintiff, the subscriber to the stock of a corporation, suing to recover from an individual promoter a share which he and his partnership received, was not required to show that such individual promoter actually received the money, as payment to his agent acting within the apparent scope of his authority, when making the misrepresentations relied on, was payment to him.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 311, 312; Dec. Dig. ⊚⇒106.]

9. BILLS AND NOTES ⊚⇒342—BONA FIDE PURCHASER — STOCK SUBSCRIPTION NOTES — IN GENERAL.

Where a subscription contract for the stock of a corporation to be organized and the notes in payment thereof were executed at the same time as parts of the same transaction, naming the corporation as payee, and on payment of which it was intended that certificates of stock

should issue, the contract and the notes were to be construed together; and, when the corporation accepted the contract and notes, it took them with notice only of the conditions contained in them, but was not a bona fide holder of the notes, as they were not taken for value because the stock was not issued or if issued was void, or a holder in due course of business, because no value was paid for them.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 830–841; Dec. Dig. ☞342.]

10. CORPORATIONS ☞80(2) — SUBSCRIPTION NOTES—FRAUD—NOTICE.

In such case, the company accepting the subscription contract and notes was not affected by fraud inducing the subscription of which it had no actual notice.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 246, 247; Dec. Dig. ☞80(2).]

On Motion for Rehearing.

11. CORPORATIONS ☞76 — STOCK SUBSCRIPTION — CANCELLATION — INSTRUMENTS GIVEN IN PAYMENT.

Where a corporation was organized under the laws of Arizona instead of under the laws of Texas, as represented by the company's agent and its subscription contract, so that the subscriber believed he was subscribing for stock in a domestic corporation in which the rights of the stockholder would be more carefully protected, and in which the broad and general provision as to its rights to borrow and loan money would not be embodied, because prohibited by Vernon's Sayles' Ann. Civ. St. 1914, art. 1121, there was no meeting of minds on a material part of the contract, and hence no contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 197–209, 213–218; Dec. Dig. ☞76.]

12. CORPORATIONS ☞80(10) — SUBSCRIPTION CONTRACT—PLACE OF ORGANIZATION—RATIFICATION.

In such case, the subscriber by executing a proxy authorizing certain officers of the company to vote his stock at a meeting to be held either in Texas or Arizona, reciting that he owned shares of the capital stock of the corporation "of Phœnix, Ariz.," did not estop him from cancellation of his contract by reason of the organization of the corporation in Arizona.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 262; Dec. Dig. ☞80(10).]

13. CORPORATIONS ☞77 — SUBSCRIPTION TO STOCK—LEGISLATIVE PROVISIONS.

Conditions prescribed by the Legislature, under which charters of corporations may be granted, must be noticed by the subscribers, and they are conclusively presumed to contract with reference thereto.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 210–212, 219–243, 455; Dec. Dig. ☞77.]

14. CORPORATIONS ☞82 — SUBSCRIPTION TO STOCK—CONSIDERATION—RESCISSION.

The promise on the part of a corporation, that when organized it would establish a loan agency and appoint plaintiff as its representative in charge, alleged as part of the consideration upon which plaintiffs subscribed for stock, which promise was attached to the subscription contract and made a part thereof, where such contract and agreement were dated prior to the incorporation of the company and the issue of its stock, would be presumed to be accepted after the corporation became a going concern, so that the company would not be permitted to accept the benefits of the contract without assuming its burden, and could not hold the plaintiff on his subscription contract without appointing him its agent to make loans.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 285–295; Dec. Dig. ☞82.]

Appeal from District Court, Hemphill County; Frank Willis, Judge.

Action by M. M. Meeks against the Commonwealth Bonding & Casualty Insurance Company, R. T. Stuart and Coke W. Harkrider, as individuals, acting under the firm names of Stuart, Harkrider & Co., and the Commonwealth Organization Company, and others, with cross-action by the Commonwealth Bonding & Casualty Insurance Company. Judgment for plaintiff against the Commonwealth Bonding & Casualty Insurance Company and R. T. Stuart, and the company appeals, and Stuart brings writ of error. Affirmed.

Speer & Brown and H. A. Turner, all of Ft. Worth, and Hoover & Dial, of Canadian, for appellants. J. W. Sanders and Newton P. Willis, both of Canadian, for appellee.

HALL, J. Appellee, as plaintiff in the court below, sued appellant company, Coke W. Harkrider, R. T. Stuart, John Scharbauer, H. P. Brenham, J. H. Carmichael, F. E. Couch, Perry McFadden, M. H. Miles, W. B. Harrison, J. D. Hagler, L. T. Lester, W. B. Slaughter, and C. H. Boedecker. Stuart and Harkrider were sued as individuals, acting under the firm name of Stuart, Harkrider & Co., and also under the firm name of the Commonwealth Organization Company. The object of the suit was to cancel four promissory notes, dated March 14, 1911, for the sum of $437.50, $500, $500, and $562.50, respectively; the first due January 1, 1912, and one annually thereafter. Plaintiff further sought to recover certain vendor's lien notes held by the defendant company as collateral to his notes described above, and to recover a certain sum of money alleged to have been paid defendant company.

The substance of the amended petition is correctly stated in appellee's brief, as follows:

"That the promoters, Stuart and Harkrider, by their agent, while soliciting the appellee to subscribe for stock, exhibited to appellee certain blank contracts which they represented were being executed by the promoters and would be executed by the corporation when organized, said blank contracts providing for the loaning of money to stockholders by the corporation when organized; that the agent of appellants represented to appellee that the company, when organized, would establish an agency in Hemphill county, to make loans as provided in the blank contract, and that appellee should be appointed the agent of the Commonwealth Bonding & Casualty Insurance Company, to make loans of money in Hemphill county; that the agent of appellant signed a written agreement, providing for the appointment of appellee as agent to represent the company in making loans for the company in Hemphill county. That the written agreement appointing appellee loan agent for Hemphill county was attached to and made a part of appellee's subscription contract. That

appellants, by a certain prospectus which was used and delivered to appellee, by the terms of the written contract, and by other representations, represented to appellee that said Commonwealth Bonding & Casualty Insurance Company should be incorporated under the laws of the state of Texas; should be a Texas corporation, with $300,000 capital stock, $200,000 of which should be paid up and free from organization expenses, before the corporation was incorporated. That said company should have a capital stock of $300,000 and surplus of $900,000, and that $200,000 had already been paid in, and the company was ready to begin business as soon as the charter could be taken out under the laws of the state of Texas; that the president of the company to be organized was in the East at that time and had perfected arrangements to secure all the eastern money that would be needed to carry on a loan business at rates of interest not to exceed 6 per cent. That the agent of appellant represented to appellee that he could secure the appointment to make loans for such company if he would subscribe for as much as $2,500 worth of stock; that appellee never did subscribe for stock in an Arizona corporation but subscribed for stock in a Texas corporation; that he never did subscribe for stock in a corporation having only $20,000 capital paid up, but subscribed for stock in a corporation to have $200,000 capital paid up, and that appellant company was not the corporation for whose stock he subscribed, and that he never accepted stock in said corporation."

Appropriate allegations were also made in the pleading, charging the falsity of said representations, notice to appellant company of their falsity, failure of the minds of the parties to meet on the contract of subscription, and the injury resulting.

The Commonwealth Bonding & Casualty Insurance Company answered by special exceptions and denied generally the allegations of fraud and misrepresentation, and that the representations, if made, were not representations of the corporation or any other person representing it or authorized by it to make such representations or to bind it; and further that the plaintiff's cause of action, if any he ever had, was stale in that he had delayed for an unreasonable time to institute his suit after knowing of his cause of action, or after he could or should, in the exercise of ordinary care, have discovered the alleged fraud. It answered, also, by appropriate pleas of waiver, acquiescence, and estoppel, denying plaintiff's right to rescission and cancellation. It further sets up that it is an innocent purchaser of the notes and collateral in controversy; the notes having been executed and delivered by plaintiff to the Commonwealth Organization Company and by said company, for value in due course of trade, without notice of any infirmity when so transferred and delivered to defendant. By way of cross-action, the company declared upon the notes sought to be canceled and prayed for judgment thereon and for a foreclosure of its lien upon the collateral securities.

Upon a trial before the court without the intervention of a jury, judgment was rendered, overruling all of the Commonwealth Bonding & Casualty Insurance Company's exceptions; and final judgment was entered in favor of the plaintiff for the cancellation of the notes executed by him, for the surrender of the collateral pledged to secure the payment of the notes, and for the recovery of $237, with interest from September 1, 1915, and against R. T. Stuart for $395.

[1] The first assignment is that the court erred in holding that plaintiff had instituted this suit within a reasonable time after discovering the fraud, or after the time when, in the exercise of reasonable care, he could have discovered the fraud upon which he relies, and in holding that plaintiff was not now barred by an unreasonable delay, by laches, and by acquiescence to have and maintain the suit, and in holding that plaintiff had instituted this suit within a reasonable time after the actual discovery of his cause of action herein, or after such time as he ought reasonably to have acquired a knowledge thereof. The testimony in the record relating to this assignment is voluminous, and we will not undertake to do more than summarize it here. The appellee testified that he did not remember the date when he first acquired knowledge of the falsity of the representations and that the company was not incorporated in Texas; that it was after he turned the matter over to his attorney for investigation and not very long before filing the suit; that about the same time he learned that the company had not made arrangements to get money in the East, and did not have a capital of $200,000 paid in and $600,000 surplus; that, while he was dissatisfied with the company, excuses had been made to him for not making loans as late as September, 1912. They told him that strife amongst the officers and stockholders had prevented them from doing business as represented. He further testified that one of the directors and acting secretary of the company explained to him the condition of the company and told him that all he had to do to realize the truth of the representations was to give the company time, and it would come around all right, —that it was getting in better shape all the time and that the reason the company was not in better shape was on account of trouble between Stuart and the other officers. Appellee further testified that he had conversations with Scharbauer, the president, and Harkrider, the vice president of the company, along the same line as with the acting secretary; that they were pleading for time and if time was granted they would make good, and that on account of strife amongst the officers the company had been retarded but would come out all right in a little while. The charter was filed March 23, 1911. This suit was instituted January 9, 1914. The testimony of appellee is contradicted to a considerable extent, but it is sufficient to sustain the finding of the court

that he was not guilty of laches in not instituting his suit earlier.

[2] If negligence and indifference is relied upon as ground of estoppel, such conduct must not only influence the action of some other person to his injury, but it must further appear that it might reasonably have been expected that it would have such effect while such other person was exercising ordinary prudence. It does not appear from the pleadings or evidence of either party that the rights of any one connected with the corporation have been injured to any extent. The rule announced in Park et ux. v. Kribs, Receiver, 24 Tex. Civ. App. 650, 60 S. W. 905, is:

If others were not led to become members of the corporation on the faith of plaintiff's subscription, mere delay will not defeat rescission. Delay which does not injure the opposite party nor innocent third parties, even though no diligence is shown in discovering the fraud, will not defeat an action for rescission, unless the statute of limitations interferes. G., H. & S. A. Ry. Co. v. Cade, 93 S. W. 124; 1 Cook on Corporations (6th Ed.) §§ 161, 162.

The fraud alleged by plaintiff consists (1) in a promise to lend money to plaintiff when the corporation became a going concern; (2) to establish a loan agency in Hemphill county, and to appoint plaintiff as its representative in charge thereof; (3) that the company would be incorporated under the laws of Texas; (4) that $200,000 of the capital stock had already been paid in; and (5) that the president of the company had perfected arrangements in the eastern money market for all the money the company would need. There is no allegation of a failure of consideration, and the last three statements are the only ones alleged upon which a judgment for rescission could be based. The agreement made between plaintiff and the agent of appellant company that he would be its representative in Hemphill county, when the business of lending money in that territory was entered into, was a conditional promise of something to be done in the future and was not a misrepresentation of an existing fact and is not shown to have been fraudulently made.

[3] Because this agreement was attached to the subscription contract and passed into the hands of the company after its organization, the company was not thereby served with notice of the alleged misrepresentations with reference to the amount of capital stock paid in, and the readiness of the company to lend money secured in the East. It is undisputed that these statements were made by the agent McCowan, and that he was representing the Organization Company at that time. If it be true that McCowan did represent that the company had $200,000 capital stock paid up, and that the president had arranged to secure the money in the East, sufficient to conduct the affairs of the company, and that such representations were fraudulently made while he was representing the Organization Company, and not the Bonding Company, the appellee cannot sustain a judgment for rescission without showing that before his subscription was accepted the latter had notice of the fraud. It is not shown that the company had any such notice. Whether the statement in the prospectus and subscription contract, to the effect that the company would be incorporated in Texas, is a material statement depends upon circumstances. There is no evidence in the record to show that stock in a company organized under the laws of Texas is more desirable or valuable than if it were organized under the laws of Arizona. Without some proof to show the materiality of this statement, appellee should not be permitted to rescind, even though the recital in the proxy be held to be notice. It appears that prior to March 11, 1913, appellee executed and sent certain officials of the company a proxy authorizing them to vote his stock at a stockholders' meeting to be held in Ft. Worth on the last-named date, and at any other meeting to be held in Texas or Arizona; and the proxy recites the fact that he owned 62½ shares "of the capital stock in the Commonwealth Bonding & Casualty Insurance.Company of Phœnix, Ariz." We held, in the case of Commonwealth Bonding & Casualty Ins. Co. v. Cator, 175 S. W. 1077, that the act of organizing the company under the laws of Arizona, in violation of the subscription contract and of the representation made in the prospectus that it would be a Texas corporation, was sufficient cause for canceling the subscription; but in that case it appeared from the record that the stock in a Texas corporation was more desirable and valuable than it would have been if the corporation had been organized under the laws of Arizona. No such state of facts appears here. For the reasons stated, we think the appellants' fourth assignment of error should be sustained.

[4-6] R. T. Stuart, against whom judgment was rendered, is here by writ of error, and in his brief insists, first, that there is a material variance between the facts alleged and the facts established by the proof as against him, in this: That he and Harkrider are sued as individuals, whereas the proof shows the cause of action against the Commonwealth Organization Company, a partnership composed of R. T. Stuart and C. W. Harkrider. The allegations bearing upon this assignment are as follows:

"That R. T. Stuart and Coke W. Harkrider, as individuals, acting under the firm name of Stuart, Harkrider & Co., and also under the firm name of the Commonwealth Organization Company, in the fall of 1910 and spring of 1911, undertook as individuals and as promoters to organize a corporation with said Stuart and Harkrider and their agents so acting as promoters," etc.

"Plaintiff says that one H. S. McCowan, a duly authorized agent of R. T. Stuart and Coke W. Harkrider, and of the Commonwealth Bonding & Casualty Insurance Company, was

in Canadian in March, 1911, and solicited plaintiff to purchase stock," etc.

"And plaintiff charges that said R. T. Stuart and Coke W. Harkrider, composing the firm of the Commonwealth Organization Company, knew about and approved of all such representations as are hereinabove set out," etc.

"Plaintiff further charges that said Stuart & Harkrider, acting as promoters, falsely and fraudulently made said representations, for the purpose of inducing plaintiff to subscribe for stock, and did deceive plaintiff," etc.

"That the truth is that the Commonwealth Organization Company, or Stuart, Harkrider & Co., were to receive 12½ per cent. of the purchase price of said stock as compensation for organizing a Texas corporation, which in plaintiff's case would be the sum of $312.50, which plaintiff paid to said H. S. McCowan for the said Organization Company, and the remainder of the $500 cash," etc.

The prayer is for judgment against all of the defendants. The suit was dismissed as to Harkrider and judgment taken against Stuart individually. Stuart did not allege that the allegations were fraudulently made, for the purpose of conferring jurisdiction on the district court, as was done in the case of Stewart v. Gordon, 65 Tex. 347. No exception was urged upon the ground that there was a variance between the several allegations quoted above, as was done in the case of Smith v. Briggs-Weaver Machinery Co., 132 S. W. 954. The rule is that partnerships are not recognized by law, either common or Texas statutory, as constituting separate and distinct legal entities; and therefore the right to sue or be sued in the partnership name is not conceded to them in our courts, and litigation by or against partnerships must be conducted in the names of the individual members of the firm, and not in the firm name. Townes Texas Pleading, p. 251; Western Gro. Co. v. K. Jata Co., 173 S. W. 518; Style v. Lantrip, 171 S. W. 786; Law Reporting Co. v. Texas Grain & Elevator Co., 168 S. W. 1001. It appears from the above quotations from the petition that plaintiff was in doubt as to the agency of McCowan, and that the statements are for this reason in a sense conflicting. Not having called the attention of the trial court to this condition by exceptions to the pleadings, the question cannot be raised here. The petition variously charges that the sum of $50 cash was paid to Stuart, to the Organization Company, and to the Bonding Company; that they each fraudulently and wrongfully retained the same. This gives the court jurisdiction of the amount as to Stuart.

[7] The fact that the evidence disclosed that appellee is entitled to recover less than the jurisdictional amount would not defeat the jurisdiction once acquired, in the absence of a plea and proof that this allegation was fraudulently made. Nashville, C. & St. L. Ry. Co. v. Grayson Co. Nat. Bank, 100 Tex. 17, 93 S. W. 431; Levy v. Lupton, 156 S. W. 362.

[8] In order for appellee to recover from Stuart the share of $500 which, it is charged, Stuart and his partnership received, it is not necessary for him to prove that Stuart actually received the money which it appears was paid to his agent, McCowan. Payment to McCowan was payment to Stuart. McCowan was acting within the apparent scope of his authority when he made the misrepresentations. The fraud of McCowan is the fraud of Stuart.

In addition to the assignments considered, plaintiff in error presents questions which have already been disposed of in the discussion of appellant's brief.

[9] Appellant company insists that it is entitled to the protection afforded a bona fide holder of negotiable paper, and should therefore recover the amount of the notes delivered to it by the promoters. The subscription contract and notes were executed at the same time, are parts of the same transaction, and must be construed together. The notes are executed in compliance with the terms of the contract, and the Bonding Company is named as payee. It was intended that when the notes were paid the certificates of stock should issue. When the Bonding Company accepted the contract and notes, it took them with notice only of the conditions contained in them; but one having notice of the conditions named in the subscription contract cannot be a bona fide holder of the notes. The notes were not taken for value because the stock was not issued, or, if issued, is void under the Constitution. They were not acquired in due course of business as that term is used in relation to negotiable paper, because no value was paid for them. It is our opinion that the rights of the Bonding Company do not rest upon the principles governing the rights of a bona fide holder, but if it is entitled to recover it must be upon the principle of estoppel. Vander Ploeg v. Van Zuuk, 13 L. R. A. (N. S.) 493, note; Andrews v. Robertson, 111 Wis. 334, 87 N. W. 190, 54 L. R. A. 673, 87 Am. St. Rep. 870.

[10] While the Bonding Company is not a bona fide holder for value, according to the law merchant, yet when it accepted the notes and contract it was not affected by fraud inducing the subscription of which it had no actual notice. Commonwealth Bonding & Casualty Insurance Co. v. Cator, 175 S. W. 1074.

In so far as the judgment decrees a recovery against R. T. Stuart, it is affirmed; in all other respects it is reversed and remanded. Affirmed in part, reversed and remanded in part.

On Motion for Rehearing.

[11-13] In the original opinion we held that there was no evidence in the record tending to show that stock in a corporation, organized under the laws of Texas, would be more desirable or valuable than stock in a corporation organized under the laws of Arizona. In motion for rehearing, appellee has

called to our attention his own testimony from the statement of facts, as follows:

"He (McCowan, the stock salesman) said this was to be a Texas corporation, and we went into details about the Texas corporation laws, about the advantage Texas laws had over other states. I would not have subscribed for stock if I had known that this corporation was to be organized under the laws of Arizona, for the reason I did not know anything about Arizona or Arizona laws, and I believe in incorporating under Texas laws. I do not know anything about Arizona laws. I was informed in reference to Texas laws protecting stockholders. I believed that I was subscribing for stock in a Texas corporation, where the subscribers would be better protected; that it would be incorporated in the state of Texas, because it was to be a home company for Texas and the rights of stockholder could be more carefully protected under the Texas laws."

We think this evidence brings the case within the rule announced by us in Commonwealth Bonding & Casualty Insurance Co. v. Cator, 175 S. W. 1074 (5, 6). The trial judge was justified in holding that appellee was not estopped and had not ratified the act of the company in procuring its charter under the laws of Arizona.

"Any amendment which entails new responsibilities or hazards will release dissenting subscribers, as by adding to the power of a railroad company the power to purchase steam boats." 10 Cyc. 406, and note 64.

The articles of incorporation, taken out under the laws of Arizona, provide that the company could not only transact a general casualty and bonding business, as was provided in the subscription contract and the prospectus to which this contract referred, but it further provides that the company may "borrow and loan money and in general do and perform such acts and things and transact such business not inconsistent with the law of any part of the world as the board of directors may deem to the advantage of the corporation." A provision as general and broad as the one quoted would not be embodied in the charter of a Texas corporation. Vernon's Sayles' Civil Statutes, art. 1121.

The rule is announced in 10 Cyc. 411b, that conditions prescribed by the Legislature, under which charters of corporations may be granted, must be noticed by the subscribers and that subscribers are conclusively presumed to contract with reference to such conditions. The stipulation that the company would be incorporated under the laws of Texas was, in the light of appellee's testimony, a material part of the subscription contract, and he cannot be held bound under a contract where the incorporation was perfected under the laws of another state; for to do so would be to hold him to something to which he did not agree, and there would be no meeting of the minds and no contract. 10 Cyc. 412d; Baker v. Ft. Worth Board of Trade, 8 Tex. Civ. App. 560, 28 S. W. 403; Collinson v. Jefferies, 21 Tex. Civ. App. 653, 54 S. W. 28.

[14] In the original opinion we stated that the promise on the part of the company to establish a loan agency in Hemphill county, and to appoint plaintiff as its representative in charge thereof, could not form, in the event of its breach, a basis for rescission. Appellee has called to our attention the fact that this agreement was alleged to be part of the consideration upon which he subscribed for stock, and that his pleadings allege a failure of this consideration; that the agreement was attached to the subscription contract and made a part thereof; that the contract and agreement were dated prior to the incorporation of the company but were not mailed until after the company was incorporated on March 25, 1911; that his stock was issued June 20, 1911. We must therefore presume that the contract of subscription was accepted after the corporation became a going concern, and the company will not be permitted to accept the benefits of the contract without at the same time assuming its burdens. It cannot hold appellee upon the subscription contract without complying with the condition requiring it to appoint him its agent in Hemphill county. The record shows that this was a condition precedent, by which the company was bound when they accepted the subscription.

Appellee's motion for rehearing is granted; the motion of R. T. Stuart for rehearing is overruled. The judgment of the lower court is in all things affirmed.

---

⊜⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes