## HUNNICUTT v. LEE et al.
### No. 1268—5673.

Commission of Appeals of Texas, Section B.
May 16, 1931.

See, also, 16 S.W.(2d) 968.

J. Cleo Thompson, of Dallas, and W. I. Gamewell, of Canyon, for plaintiff in error.

Geo. T. Burgess and J. Hardy Neel, both of Dallas, for defendants in error.

RYAN, J.

On November 18, 1924, Charlie H. Hunnicutt and wife conveyed to E. B. Lee a tract of land out of the Logan league, being 50 by 150 feet, fronting 50 feet on Grand avenue in the city of Dallas, for a recited consideration of $1,000 cash in hand paid and the execution and delivery by Lee of one promissory note in writing for $4,250, payable in monthly installments of $50 each, including interest, secured by vendor's lien retained, and also by a deed of trust lien of even date, to one E. T. Marion, trustee. At that time there was on the land conveyed a frame building of five rooms, bath, and sleeping porch, which was rented to a tenant for $25 per month.

On January 7, 1926, E. B. Lee and wife conveyed the above property to R. G. Hockett for a recited consideration of $1,250 cash in hand paid, the assumption and agreement to pay by Hockett a balance of $330 and interest due on a certain paving lien held by the Uvalde Paving Company, and the execution and delivery by Hockett of one promissory note in writing in the sum of $5,000, payable in monthly installments of $50, including interest, to the order of Charlie H. Hunnicutt, in lieu and extension of the above-described note in the sum of $4,250, executed by E. B. Lee to Hunnicutt's order on November 18, 1924.

On or subsequent to January 7, 1926, E. B. Lee acquired title to and possession of said dwelling house from said Hockett, and, in or about August, 1926, Lee moved the house off the land, and located it upon lot 10, block 1460-A in Fair Park addition to the city of Dallas, which was another lot then owned by him.

Lee acquired title to said lot 10 by deed from Mary C. Watts and husband, dated September 1, 1926, the recited consideration being $10 in cash and $1,490 due on or before 90 days after that date, payable to said Mary C. Watts, and secured by deed of trust of even date to C. H. Watts, trustee.

On November 20, 1926, E. B. Lee and wife executed and delivered deed of trust conveying said lot 10 to T. O. Junkin, trustee, to secure payment to Investment Securities Company of Texas, of their notes aggregating $2,-500, and comprising two notes for $250 each, and one note for $2,000, due December 1, 1929, 1930, and 1931, respectively, with interest payable semiannually. Said deed of trust recites that said notes are given in renewal and extension of the note dated September 1, 1926, for $1,490 executed by Lee,

payable to Mary C. Watts on or before 90 days after date, and also to secure the payment of $1,010 advanced to Lee and wife by said Investment Securities Company, it being expressly agreed that all liens securing said indebtednesses shall remain in full force and effect, and the Investment Securities Company be subrogated to all the liens, title, interest, and remedies thereunder.

The above three notes and liens were assigned on December 27, 1926, by the Investment Securities Company to Chatham-Phenix National Bank & Trust Company, who, on January 26, 1927, assigned said notes and lien to itself, as trustee. The Bank & Trust Company received the notes and lien under the terms of a trust agreement between it and the Investment Securities Company, dated October 3, 1925, for the benefit of persons purchasing bonds issued by the Investment Securities Company and to the extent of these and other notes and liens, against which such bonds were issued.

Hunnicutt, on October 18, 1927, brought this suit in the district court of Dallas county against E. B. Lee and Chatham-Phenix National Bank & Trust Company, trustee, asserting a superior equitable title to said house and the right to rescind the sale thereof, and tendered to defendant Lee the note given by Hockett in renewal of the original note given by Lee to him; in the alternative, recovery was sought in the sum of $2,500 as the value of said house and foreclosure of lien therefor against lot 10.

The petition contains also the following prayer: "And plaintiff further prays in the alternative that if rights of the defendant, Chatham Phenix National Bank & Trust Company, Trustee, have intervened so that plaintiff may not be awarded the relief hereinabove prayed for, then he prays that his contract or equitable lien upon said house, arising from non-payment of said purchase money, be established and foreclosed as against said house, subject to such intervening rights, and that he have his order of sale, writ of possession and costs of suit; and further in the alternative plaintiff prays that he recover of defendant, E. B. Lee, a judgment in the principal sum of $2,500.00, together with 6% per annum thereon as interest or damages from the date said house was converted, together with all costs of suit; and plaintiff further prays for such relief, legal and equitable, general and special to which he may show he is entitled."

The defendant Lee answered by general demurrer and general denial; the Chatham-Phenix National Bank & Trust Company, trustee, after general demurrer and general denial, pleaded specially their claim under the deed of trust from Lee and wife to T. P. Junkin, trustee, conveying said lot 10, to secure said indebtedness of $2,500, at which time neither it nor the Investment Securities Company had any knowledge that the house in question, then located on lot 10, had been removed from other property, or that the plaintiff had any claim or lien thereon; that thereafter the plaintiff brought suit in the district court of Dallas county against Hockett and wife and one Frank E. Wells upon said notes so given by Lee and by Hockett to plaintiff and for the recovery of the property described in the deed from him to Lee, alleging that he was the holder of the superior title by retention of the expressed vendor's lien to secure payment of said notes, and on September 7, 1927, judgment was rendered therein canceling and rescinding the deeds of conveyance from plaintiff to Lee and Lee to Hockett and restoring to plaintiff the title and possession to the land and premises in question, and canceling the note executed by Lee to plaintiff and the note executed by Hockett to plaintiff. It was further averred that, at the time of filing said suit and the entry of said judgment, said house was not located upon the land conveyed by plaintiff to Lee, but was located on the land described in the deed of trust from Lee to Junkin, and constituted a part of the real property conveyed by said deed of trust; also that said judgment is res judicata of plaintiff's claim to said house, and is a cancellation of the notes executed by Lee and Hockett to plaintiff and an investiture of plaintiff with the title in the shape and condition it was and as it existed on the date of said judgment, September 7, 1927, and a release and cancellation of any liens claimed by plaintiff upon any other property securing payment of either or both of the notes executed to plaintiff by Lee and Hockett.

And by way of estoppel it was averred: "That if the house was upon the land as conveyed by plaintiff to Lee, said house was moved by the defendant, Lee, from said land in August, 1926, to Lot Ten (10) in Block No. 1460-A of Fair Park Addition to the City of Dallas, Texas, long prior to the execution by Lee and wife of the deed of trust securing the payment of the notes, and of the notes by Lee and wife held by this defendant and of the payment by the Investment Securities Company of Texas and this defendant of the moneys for and on account of said notes, and plaintiff had full knowledge that said house had been so removed, if it was removed, and with such knowledge allowed the same to remain on the property mortgaged to this defendant and allowed the defendant, Lee, to so attach it to Lot No. Ten (10) in Block No. 1460-A of Fair Park Addition as to become a part and parcel of said lot, by reason of which plaintiff is now estopped, having permitted the apparent ownership of said house to remain in said Lee, to now assert title thereto as against this defendant and the mortgages, liens and notes now held by this defendant."

By supplemental petition, plaintiff alleged that said house was not involved in said judgment canceling said notes and vesting title in him to the land, nor were the defendants here parties to that suit, and prayed: "That if the Court find that said deeds, notes, titles, liens or rights were cancelled and/or rescinded and/or released as to the defendants in this suit, then the court revive and/or treat said deed, notes, title, liens, remedies and rights which previously existed thereunder as in force in favor of plaintiff and against the defendants; and plaintiff further prays for general and special, legal and equitable relief."

The trial court rendered judgment denying any recovery by plaintiff, Hunnicutt, against the Chatham-Phenix National Bank & Trust Company, trustee, but fixed a lien in favor of plaintiff and against E. B. Lee upon the house and on lot 10 to secure $2,500, value of such house, inferior and subordinate to the lien of the deed of trust executed by Lee and wife to Junkin, trustee, dated November 20, 1926, securing the three notes of that date, two in the sum of $250 each and one for $2,000, due as hereinabove stated, payable to the Investment Securities Company of Texas, and held by the Chatham-Phenix National Bank & Trust Company, trustee, which was adjudged a first, prior, and superior lien upon said lot and the house situated thereon to any lien decreed in favor of the plaintiff. It was further ordered that the lien decreed in favor of plaintiff be foreclosed in favor of plaintiff, but subject to the liens and claims of the Chatham-Phenix National Bank & Trust Company, trustees, and, if the proceeds of sale applied to plaintiff's claim be not sufficient to satisfy same, then no execution shall issue against defendant E. B. Lee, plaintiff in open court having dismissed his cause of action seeking a personal judgment against said Lee.

The trial court's judgment was affirmed by the Court of Civil Appeals. 23 S.W.(2d) 479.

It is uncontroverted that Hunnicutt and his wife knew of the house's removal almost immediately thereafter. He testified that his sister-in-law 'phoned him the house was being moved and "was off the place going down East Grand Avenue," and he "saw it on the other lot about the time it was moved there."

"I saw it was over on the new lot. The lot on which the house was moved to is six or seven blocks from where I live now, which is the same place I lived in 1926. Shortly after I saw the house after it was moved, I saw them working the house over, they boxed it all around, put in a new foundation and re-painted it and repapered it. I saw all of that; they fixed it up. The first step that I took to recover the house is the time that I filed my original petition in this case. October the 18th, 1927, was the first attempt made by me to recover the house."

To the same effect is the testimony of Mrs. Hunnicutt; she testified also that the house was moved in August or about the 1st of September, 1926; that Mr. Lee had it moved, and she knew "within a couple of days" where the house was moved to, and nothing was ever done towards its recovery until this suit was filed in 1927.

It is in evidence that, before Lee negotiated the loan on lot 10 from the Investment Securities Company, its manager inspected lot 10, and found a house in fairly good repair and in normal condition located thereon. He testified there was nothing about the house that would lead him to believe or to put him on notice that it had been moved from some other place. "It looked like a house that had been built there and been standing there for several years, but had been redecorated at a recent date." He estimated the property worth about $4,000 when he made such inspection in November, 1926. He further testified that the house looked like it belonged and had been built there. He had no knowledge that the house was ever owned by Hunnicutt. He testified: "I did not know that the house had been moved there. There was nothing to arouse my suspicions that the house had been moved there and nothing to advise me that Hunnicutt ever owned the house. * * * I never heard of Mr. or Mrs. Hunnicutt before I made the loan and I don't know what they knew; they never discussed it with any member of our company that I know of. * * * Neither Mr. Hunnicutt or Mrs. Hunnicutt ever advised me that they owned that house prior to the filing of this suit and they never advised the Investment Securities Company of Texas that I know of."

It is also in evidence that the trust officer of the Chatham-Phenix National Bank & Trust Company, who acted for it and handled the transfer of the Lee notes and lien from the Investment Securities Company, had no knowledge at that time that the house had been moved to lot 10 from another lot.

## Opinion.

The house was part of the security reserved by Hunnicutt, and, not having consented to its severance from the lot, he had the right to foreclose his vendor's lien upon it as well as on the lot on which it was originally situated, or in a proper action recover it or its value; such recovery could be had from Lee and Hockett and any other person in possession of it or asserting a subsequent claim thereto (Bowden v. Bridgman [Tex. Civ. App.] 141 S. W. 1043; Jones v. Bull, 90 Tex. 187, 37 S. W. 1054), unless Hunnicutt is estopped, as against the bank, because of his negligence in not enforcing his claim as soon as he discovered the house being moved, or within a reasonable time thereafter, and such negligence influenced the bank to its injury,

and it must reasonably have been expected that it would have such effect, while the bank was exercising ordinary prudence (Commonwealth Bonding, etc., Co. v. Meeks [Tex. Civ. App.] 187 S. W. 681, writ refused; Neale v. Sears, 31 Tex. 115; 21 C. J. 1169).

The evidence shows that plaintiff in error saw the house being moved by Lee, saw it on and affixed to lot 10, being repaired, repainted, and repapered, notwithstanding which he took no steps to recover it until this suit was filed on October 18, 1927, fourteen months after its removal. The house was a fixture on lot 10 for three months from August 26th to November 26th before the bank made its loan, and under the testimony Hunnicutt knew that Hockett had sold the house to Lee, and that Lee had severed it from the original lot, that the removal of the house depreciated his security, and that it had been remodelled and repainted, thus permitting Lee to stand out as the owner of the house. He was bound to have known that Lee might dispose of the property by sale, or mortgage the property to one who would not know that the house had been moved from some other lot and was incumbered, and who in examining the title to lot 10 would find no evidence of Hunnicutt's claim to the house then situated thereon and affixed thereto. The records of Dallas county showed no lien or claim in favor of Hunnicutt as to lot 10, when the bank loaned its money in good faith to Lee.

Hunnicutt was bound to have known that the removal of the house by Lee was, in part at least, a severance of it from the land on which he had his liens, and its location on lot 10 might make it a part thereof, yet he stood by and did nothing until eleven months after the bank had made its loan and parted with its money, when he brought this suit.

Testimony of the bank's officials is uncontroverted that before making the loan to Lee they examined the security offered, to wit, Lot 10 and the improvements thereon, and there was nothing to put them upon notice that the house had been removed from another lot; in fact, they knew nothing of Hunnicutt or his claim..

■ It may be true that mere surrender of the possession of property to another is not sufficient to estop the party surrendering it from subsequently asserting a right or title thereto, but he may be estopped when the circumstances are such as to indicate a disclaimer of such right or title, and it would be inequitable to permit him to assert the contrary. 21 C. J. p. 1168, § 174, p. 1172, § 177.

Of course, in such case, the party claiming estoppel must himself be innocent of knowledge of the other's claim and be not guilty of negligence in not ascertaining such other claim.

As said by Chief Justice Phillips in Burnham v. Hardy Oil Co., 108 Tex. 564, 195 S. W.

1139, 1143: "The innocent purchaser * * * acquires the title to the interest through the force alone, of the doctrine of equity which refuses to visit loss upon one in his situation, but imposes it rather upon those who, having the real interest, have been negligent in permitting another to hold the legal evidence of perfect right in himself."

The Court of Civil Appeals concluded that the judgment rendered by the district court of Dallas county, canceling the notes given by Lee and Hockett to Hunnicutt, and canceling the deed from him to Lee and from Lee to Hockett, and vesting title in Hunnicutt to the lot at a time when the house was not located on it, had the effect of an investiture of plaintiff, Hunnicutt, with the title to the real estate in the shape and condition it was and as it existed on the date of such judgment (September 7, 1927), minus the house, and is a release and cancellation of any liens claimed by plaintiff upon any other property securing the payment of either or both notes executed by him or Hockett, and is therefore res judicata of the issue here.

Application for writ of error was granted Hunnicutt by the Supreme Court on his complaint of such finding of res judicata, the notation being "granted on second assignment of error," and such assignment being, "The Court of Civil Appeals erred in holding in its opinion that the judgment in the case of Hunnicutt v. Hockett was res judicata of the suit at bar," followed by the proposition that "a plea of res judicata cannot prevail unless there is a concurrence of four elements:—(1) Identity of the thing sued for; (2) Identity of the cause of action; (3) Identity of the persons and the parties to action; (4) Identity of quality in the persons for or against whom the claim is made," and by the further proposition that one of the four essentials of res judicata, to-wit:—identity of persons and parties to the action, is lacking and it was not shown that the bank acquired its rights subsequent to the filing of the Hockett suit and rendition of the judgment therein, nor that Hockett acquired the house under the judgment and under a contract of warranty, nor that such title had inured to the bank, as trustee, under the rights of title obtained by Hockett in that suit.

■ The trial court made no findings of fact or conclusions of law, and none was requested, in the absence of which, when the pleadings and evidence support a judgment, it must be affirmed on appeal, because it will be presumed that the trial court decided the case upon such of the pleadings and proof as will sustain the judgment. Walker v. Cole, 89 Tex. 323, 34 S. W. 713; Merryman v. Bank (Tex. Civ. App.) 288 S. W. 840; Daniel v. De Ortiz (Tex. Civ. App.) 140 S. W. 486; Broussard v. Cruse (Tex. Civ. App.) 154 S. W. 347; Guerra v. Rodriquez (Tex. Civ. App.) 120 S. W. 593.

■ Therefore, having reached the conclusion that the judgment of the district court should be affirmed on the ground that Hunnicutt is estopped as against the bank, it is unnecessary to pass upon the question of res judicata.

We recommend that the judgments below be affirmed.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.